**Anna Olson, Plaintiff-Appellant, v. Terry Fleetwood, Defendant-Appellee.**

**Gen. No. 68–139.**

Second District.

November 12, 1969.

Rehearing denied January 29, 1970.

Theodore L. Anderson, of Sycamore, and Philip H. Corboy, of Chicago, for appellant.

O'Brien, Burnell, Puckett, and Barnett, of Aurora, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiff appeals from an order of the trial court that denied her post-trial motion for a new trial as to damages only.

On December 24, 1963, the plaintiff, then a 54-year-old spinster, stopped her automobile at a stop sign located at the intersection of North Avenue and California Street in Sycamore, Illinois. It was a clear, bright day but the lightly traveled intersection was coated with ice. Moments later, her automobile was struck in the rear by an automobile driven by the defendant. The plaintiff's car was not damaged.

The plaintiff was jolted forward by the impact and heard her neck "crack." She felt an immediate pain in her neck and was driven to her physician, Dr. John Eggers, by a passerby. Dr. Eggers examined Miss Olson and sent her to the hospital for X rays. The pain increased and on December 26 she entered Sycamore Hospital at Dr. Eggers' direction, where she remained 39 days for traction and therapy.

After her release from the hospital on February 3, 1964, the plaintiff did not return to her own home but lived with her uncle until October of 1964. During this period she was driven to the hospital by a neighbor three times a week for further physiotherapy and traction. She wore a cervical collar until September of 1964.

Although the pain in her neck had lessened prior to her discharge from the hospital, Miss Olson began to experience pain in her lower back and legs during her stay with her uncle. After her return to her own home

412

she was unable to do any heavy work and has continually suffered pain in her neck, back and legs.

Bills in the total amount of $2,278.90 for her hospitalization, a back brace, drugs and services rendered by Dr. Eggers were admitted into evidence. At the conclusion of the trial, the jury returned a verdict that found for the plaintiff and against the defendant and assessed her damages in the sum of $2,500. Judgment was entered on the verdict. The plaintiff here maintains that the verdict was grossly inadequate and against the manifest weight of the evidence in that it failed to fairly compensate her for all the proven elements of damage.

The evidence disclosed that the plaintiff had lived with her parents on a small farm outside of Sycamore for many years prior to the accident. Although she never farmed, she did maintain the yard, mow the lawns and do the heavier housework. Her mother died in 1949 and her father in 1963.

A number of neighbors and acquaintances, including a nurse, testified that they knew Miss Olson both before and after the accident and all agreed that she had been in apparent good health and vigor prior to that time but fatigued and in obvious pain thereafter. Dr. Eggers testified that he was the plaintiff's physician since 1939. In the 1940's she had low back pain and he performed a uterine suspension and fitted her with a sacroiliac belt for at least two years. In 1954, he prescribed vitamins since she was fatigued and tired at that time. For a period of four or five years before the accident, Dr. Eggers treated Miss Olson for hypertension and a variety of feminine complaints. She visited him approximately twice a month and took, at his advice, a number of drugs for tension and stomach discomfort.

Dr. Eggers further testified that Miss Olson visited him on December 24th, 1963, and stated that she had been hit by an auto and complained of pain in her neck and down her thoracic spine. He sent her to the hospital

for X rays and prescribed something for the pain. On December 26, she was admitted to Sycamore Hospital since the pain had increased. Dr. Eggers made a complete examination and found she had a muscle spasm in her neck and contusions on her chest. He recommended bed rest, intermittent heat traction and drugs for her pain and tension. His diagnosis at the time she was discharged from the hospital was an acute sprain, or damage to the ligaments, of the cervical spine. It was his opinion that the sprain would cause pain and that there was a causal relationship between the sprain and the history of the accident.

In March, 1964, Dr. Eggers had X rays taken of the plaintiff's lower back since she complained of pain in that area and in her legs. The X rays disclosed an arthritic condition in the lumbar spine that the doctor believed could have been caused by an aggravation of an old condition at the time of the accident.

Dr. Eggers concluded that although Miss Olson's cervical spine was "good," she would continue to suffer pain in her neck and lower back. It was his further opinion that this condition would be permanent since the damaged ligaments were healed by scar tissue that did not have the natural flexion of normal tissue and would resist movement or stress.

In his brief, the defendant asserts that the plaintiff had the affirmative burden to show that the verdict of the jury was not a compromise of liability against damages in order to be entitled to a new trial on the sole issue of damages. The plaintiff has not included the testimony of the defendant in her abstract and it was omitted from the report of proceedings at her request. In support of this assertion, the defendant relies primarily on the case of King v. City of Chicago, 53 Ill App2d 484, 202 NE2d 839, wherein the plaintiff appealed for a new trial on damages only and did not include any evidence on the issue of liability in the record for review. The

trial court had denied a post-trial motion for a new trial on the question of damages alone on the grounds that "the proof as to liability was extremely thin and the jury's verdict in favor of plaintiff for $1,000.00 was a compromise of liability against damages. . . ."

The Appellate Court in the King case affirmed the lower court and said at page 487:

> "Since the trial court's ruling on plaintiff's motion was based on the fact that he felt that the jury's verdict was the result of a compromise of liability against damages, it was incumbent upon plaintiff to show on this appeal that there could have been no such compromise for the reason that defendant's liability was established by her evidence. This could have been done only by plaintiff presenting the record of liability evidence to this court, which she has failed to do."

It is not clear in the King case if the court was of the opinion that it was necessary to include all the evidence on the issue of liability in the record for review where a new trial is sought on damages only or only so much of the record that would establish a prima facie case since it states further that "Where, on the other hand, the record shows that there was enough evidence for a jury to find a defendant liable, then the court may order a new trial on the question of damages alone where it appears that the jury improperly assessed the amount of the damages."

In our case, the record does contain sufficient evidence to support the determination of the jury on liability. In any event, the King case is to be distinguished from our own in that the trial court found that the low verdict was a result of compromise. Obviously, to properly review that determination it was necessary to provide the higher court with the record on the issue of liability. We do not feel that the King case required a party to

preserve the entire record on liability in all cases to be entitled to a new trial on damages only.

Although the court in DeFreezer v. Johnson, 81 Ill App2d 344, 225 NE2d 46, also cited by the defendant, does cite the King case to that effect, the court there did have the entire record before it. DeFreezer sought a new trial either on the issue of damages alone or generally and the court concluded from a review of the record that the low award returned by the jury might have been a result of a close case on liability and remanded the matter for an entire new trial.

Similarly, in Kinsell v. Hawthorne, 27 Ill App2d 314, 169 NE2d 678, the appellant sought a new trial in the alternative and the Appellate Court remanded for a new trial generally since the defendant conceded that the low award was a result of a compromise by the jury.

The King, DeFreezer and Kinsell cases were all decided prior to the effect of Supreme Court Rule 323(a), (Ill Rev Stats 1967, c 110A, par 323(a)) which provides:

> "A report of proceedings may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. The report of proceedings shall include all the evidence pertinent to the issues on appeal."

A footnote to the rule inserted by the Rules Committee of the Supreme Court states "The last sentence is new. Evidence that pertains solely to an issue not presented on appeal, e. g., the issue of liability when the appeal relates only to damages, need not be included."

■■ We realize that the comment of the committee has no binding effect on our determination, yet we feel

that it would be inconsistent with the purpose of the new rules to now hold that it is necessary to preserve the entire record on the issue of liability in all appeals related only to damages.

■ We next consider if the verdict returned in this case was, in fact, inadequate. There is a deplorable lack of consistency in the reported cases on the question of inadequate verdicts in personal injury cases. It seems fairly well settled that a verdict in an amount less than the proven out-of-pocket expenses of the plaintiff is patently inadequate. O'Brien v. Howe, 30 Ill App2d 419, 174 NE2d 905; Stroyeck v. A. E. Staley Mfg. Co., 26 Ill App2d 76, 167 NE2d 689.

■ In most other cases, the assessment of damages in personal injury suits is left to the jury and will not be disturbed on review unless it appears that the jury was improperly instructed or the verdict was a result of passion or prejudice. Lazzaro v. Garrett, 100 Ill App2d 452, 242 NE2d 59; McManus v. Feist, 76 Ill App2d 99, 221 NE2d 418; Ward v. Chicago Transit Authority, 52 Ill App2d 172, 201 NE2d 750.

It is not contended here that the jury was not properly instructed or that the plaintiff was denied a fair trial but only that the margin between the verdict and the out-of-pocket expenses was so slender as to indicate in itself that the jury did not consider all of the elements of damage.

■ We cannot agree with that contention. The award is not high and it is true that another jury might have returned a verdict for a higher sum. However, there is nothing to indicate that the jury did not consider all items of damage and, having done so, the assessment of the actual loss was within its discretion.

In Mineiko v. Rizzuto, 65 Ill App2d 35, 212 NE2d 712, cited by the plaintiff, the court concluded that the jury

misunderstood the evidence relating to the plaintiff's loss of wages and the injuries in Wihr v. Bruno's Appliances, Sales & Service, 29 Ill App2d 145, 172 NE2d 633, were of far greater severity.

For the reasons stated, the judgment of the trial court will be affirmed.

Judgment affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.