HAROLD E. KELLY, a minor, by DALE L. KELLY, his next friend, Plaintiff-Appellant, *v.* ROBERT REYNOLDS, Defendant-Appellee.

(No. 11341;

Fourth District—July 1, 1971.

Ryan & Heller, of Mattoon, (Harlan Heller, of counsel,) for appellant.

Craig & Craig, of Mattoon, (William E. Larrabee and Donald E. Castles, of counsel,) for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

The cause stemmed from an automobile collision and went to trial on both the complaint of plaintiff and the counterclaim of defendant, after which the jury returned a verdict of $2,000 for Kelly on his complaint and against Reynolds on his counterclaim. The only question raised upon this appeal is whether or not the trial court erred in denying a motion for new trial on damages only. Concisely stated, plaintiff contends: that defendant's counsel made certain binding concessions in closing argument as to a proper amount of verdict; that there was improper use of discovery depositions permitted in cross-examination which affected the amount of verdict; and that the amount of jury verdict was inadequate as a matter of law.

■■ First: there appear in the record affidavits and a counter-affidavit relative to the post-trial motion for new trial on damages only which purport to recall what defendant's counsel said in closing argument relative to a proper amount of verdict (being more, naturally, than the $2,000 awarded). They are in direct conflict as to the exact comments made by counsel. The closing arguments were not transcribed and are therefore not available to this court. Nor is there any agreed stipulation by counsel as to what transpired, nor satisfactory "bystanders' bill", nor

recollection of the trial judge, let alone an official transcript of the court reporter. It appears to us quite elementary that this court is unable to adjudicate in a vacuum, and without a record, or acceptable substitute therefor, this question becomes one of no import or consequence.

■■ Second: it is urged that the court permitted improper cross-examination by improper use of a discovery deposition. Plaintiff argues that the cross-examination was so prejudicial before the jury that it resulted in an inadequate verdict. Assuming, arguendo, that such conclusion necessarily follows, let us examine the matter in controversy. On cross-examination Kelly testified that he did not know whether his car stopped on impact or whether it continued, whether it spun or anything else. Defendant's counsel then read the following from Kelly's deposition:

"Question: All right, immediately after the impact did your car stop or continue to travel?

Answer: It stopped.

Question: At the point of impact?

Answer: There or pretty close."

There can be little doubt that the use of depositions for the ostensible purpose of impeaching a witness is by general and widespread practice greatly abused. But Illinois Supreme Court Rule 212 seems quite clear in its restrictive and limiting use of depositions, providing that "Discovery depositions * * * may be used *only:* (1) For the purpose of impeaching the testimony of the deponent as a witness in the same manner and to the same extent as any inconsistent statement made by a witness; * * *" (emphasis added). The "impeachment" of a witness is accomplished by adducing proof that he is unworthy of credit and "inconsistent" has been aptly defined as "Mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other." (See *Black's Law Dictionary,* 1968, Revised Fourth Edition). The key words, then, in the test for proper use of discovery depositions on trial are "impeaching" and "inconsistent". A measuring of the above cross-examination by the standards here summarized demonstrates to us that this was an improper use of plaintiff's deposition—the statements were neither inconsistent, nor impeaching. We find neither contradiction nor inconsistency in the statements, nor do we interpret the statements to in any way do harm to the credibility of the witness. The trial court erroneously permitted the use of the discovery deposition upon cross-examination, but to our view it was harmless error. Not only is the scope and extent of cross-examination largely a matter of discretion of the trial judge, but in this case in particular

the questions asked went specifically to the issue of liability which was found by verdict to be in favor of appellant.

The real hub issue involved in this appeal is whether or not as a matter of law the jury verdict of $2,000 is inadequate. The evidence in the record before us appears to be crystal clear and undisputed. Nothing appears to dispute or contradict the following evidentiary summary: Kelly suffered fractured teeth, a fractured sternum, two puncture wounds in the chest and injuries to his knees. There was also medical testimony adduced by Kelly that "within a reasonable degree of medical certainty there is permanent damage to the ligamentous structure and/or the cartilage of the right knee," that the right knee would be more apt to be reinjured, and that "there will be a tendency to have some aching pain in this knee permanently as a result of prolonged use in standing or walking or otherwise using the knee joint." The total of all medical expenses amounted to $1,070.40.

■■ Regarding lost wages, Kelly's testimony was that he was an 18-year-old high school student at the time of the collision and had made arrangements to work for the same grain company for whom he had worked the summer before. He testified that he was to work part-time 9½ hours per week during April and May, at $1.60 per hour, and after school was out he would work fulltime at the rate of 56½ hours per week, for $1.60 per hour, plus time and a half for overtime. The testimony reflects that had Kelly actually worked according to his testimony, he would have earned $950.40 in wages. Appellee urges in sum that all we have is a high school student whose "testimony concerning a speculative job is the sole basis for his claim for loss of earnings." Upon combing the record, however, we find no evidence to the contrary, nor do we even find any cross-examination of Kelly that depreciates or diminishes the evidence as to lost wages. Appellee apparently hinges his argument on the "speculative" aspect, by urging that since Kelly was not actually on the job, whether or not he would have worked could not be ascertained. We cannot accept this theory. Kelly had worked for this grain company in the past during school vacation, and it is common knowledge that in rural areas grain companies and elevators work more than any forty hour week during the summer farming months. But is there not a more basic question posed: Does this court have the authority to "re-write" the oral contract for employment between plaintiff and the grain company? Can we say that Kelly would not have worked 56½ hours per week and only 40? Can we "speculate" that in the normal course of events he would not have reported for work, for whatever the reason? We believe not. Insofar as man cannot control completely his destiny from day to day,

any plan or intention *in futuro* made by man is in that sense "speculative". But for our purposes here, the testimony of Kelly stands as the only and uncontradicted evidence on this issue and we have no authority or jurisdiction to tamper with it.

Consequently, we have uncontroverted testimony of some degree of permanent injury, pain and suffering, medical expenses and lost wages, the latter two elements totaling out-of-pocket expenses of $2,020.80. The jury having found in favor of the plaintiff on the issue of liability, it was the duty of the jury to fix the amount of damages pursuant to the elements enunciated in the instructions of the court. The trial judge properly instructed the jury in the usual and customary manner, setting forth the normal elements of damages: "The nature, extent and duration of the injury; the disability resulting from the injury; the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury; the reasonable expense of necessary medical care, treatment and services received; the value of earnings lost." Since the verdict was less than even the total out-of-pocket expenses, we must conclude that the jury failed to take into consideration these accepted and proper elements of damage that were unquestionably proven on the trial.

But, contends Reynolds, the fact that the verdict is less than the sum of the total special damages is of no significance, citing *Haleem v. Onate,* 71 Ill.App.2d 457, 219 N.E.2d 94, 96. That is not the interpretation we garner from that able opinion. The court in *Haleem* merely said that the special damages proven are not the *only* measure of damages, nor do they "automatically" establish a "minimum level of recovery". That court went on to point out that:

"There are other evidentiary matters to be considered. The testimony surrounding the claimed injuries may have been impeached or it may be contradictory or unreliable. There may be evidence which carries an implication that the injuries have been exaggerated or even feigned or that the medical treatment was either unnecessary or prolonged. There may be evidence which makes doubtful the necessity of the time alleged to have been missed from work. All of these and like factors must be weighed. And if there appears to be evidence suggesting a genuine conflict as to the legitimacy of the expenses incurred, then the verdict of the jury should not be disturbed on review."

None of these qualifying factors, properly to be considered, even remotely appear to be present in the case at bar. The record does not reflect a *scintilla* of impeachment, contradiction, exaggeration, feigned or unnecessary medical treatment. And the other cases cited to us by

1103

appellee can readily be distinguished on their facts from the case before us.

■■ There can, of course, be no positive and absolute yardstick fixing damages for personal injuries and as a general rule that question becomes primarily one for the discretion of the jury. But where there is uncontradicted evidence of medical expenses and lost wages, of permanent injuries and pain and suffering, there can be little doubt that a verdict for less than the sum total of the special out-of-pocket expenses in no way follows the proper instructions of the court to compensate the plaintiff for his injuries, temporary and permanent, his disability, pain and suffering, medical expenses and lost earnings. We hold with that line of cases which enunciates the "patently inadequate" rule. Under the posture of the evidence in this case a verdict in a lesser amount than the uncontradicted out-of-pocket expenses is manifestly inadequate—indisputably insufficient. *Olson v. Fleetwood,* 116 Ill.App.2d 411, 254 N.E.2d 271; *Rapp v. Kennedy,* 101 Ill.App.2d 82, 242 N.E.2d 11; *Mineiko v. Rizzuto,* 65 Ill.App.2d 35, 212 N.E.2d 712; *O'Brien v. Howe,* 30 Ill.App.2d 419, 174 N.E.2d 905; *Stroyeck v. A. E. Staley Mfg. Co.,* 26 Ill.App.2d 76, 167 N.E.2d 689; I.L.P. Damages § 162.

The judgment of the Circuit Court of Clark County will be reversed and the cause remanded for a new trial as to damages only.

Reversed and remanded.

SMITH, P. J., and CRAVEN, J., concur.