ROSE MARIE BROWN, n/k/a Rose Marie McCord, Plaintiff-Appellant, v. ST. JOHN'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS et al., Defendants-Appellees.

Fourth District   No. 13374

Opinion filed August 8, 1977.—Rehearing denied September 28, 1977.

CRAVEN, P. J., concurring in part and dissenting in part.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellant.

G. William Horsley and Associates, Lott & Surman, and Robert G. Heckenkamp, of Heckenkamp & Fuiten, all of Springfield, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

Malpractice action.

Plaintiff consulted defendant Doctor Azeris in March 1970 for correction of a hammer toe deformity in the fourth and fifth right toes. The surgery, he advised her, would be painful and she opted for the hospital in lieu of his office with a local anesthetic.

The surgical procedure—known as Arthrodesis—was performed the next day at St. John's Hospital. Briefly, this surgical procedure fuses the joints by removing bone and stabilizes the toes with a Kirschner Wire which goes through the center of the bone and connects the phalanges. To be able, post-operatively, to test for circulation, the tips of the toes are exposed to facilitate observation.

Following her discharge, an infection developed at the site of the incision in each toe resulting in further hospitalization. A debridement procedure followed, occasioning loss of tissue and some bone from both toes. Plaintiff characterizes this as an "amputation"—defendants look askance at such word with all its connotations and prefer to speak in terms of "partial loss." Antibiotics were first tried, but when it became apparent that they would not control the infection the doctor made the decision to debride the area. The medical term for plaintiff's condition following the surgery is ischemia.

Plaintiff takes issue with the doctor's method of surgery and says both he and the hospital were negligent in caring for her following such. On trial, at the close of her case, a directed verdict was granted the hospital. According to her, the reason for the directed verdict was that plaintiff had failed to establish an agency relationship between the doctor and the hospital. Defendant, in addition, says it was because the hospital was not negligent under the *Darling* rule. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) At the close of all the evidence the jury returned a verdict against the doctor for $1,000.

FIRST: Plaintiff argues that such award is grossly inadequate in that it barely covered her medical bills and lost wages and that nothing was awarded for disfigurement, future loss of earnings and, needless to say, pain and suffering. We are asked to reverse and grant a new trial on the issue of damages only.

This we cannot do.

■■■ Courts traditionally have been reluctant to interfere with the discretion of the jury as long as the award is within the range of the evidence, the instructions proper, and there is no improper exclusion of

evidence. Sometimes it is said that, where the award is "palpably inadequate," a new trial will be granted—but we equate "palpably" in this context to mean that the award was below the range of the evidence. The general rule has always been that an award which fairly and reasonably compensates for the loss occasioned by defendant's action is sufficient and the fact that the jury was less than generous does not necessarily mean that their award is legally or "palpably" inadequate. Admittedly here, the award covers the medical bills and wages lost. Plaintiff argues that it is "indisputably insufficient" because she "lost her toes," suffered greatly and was disabled. Cases are cited to us of toes lost and much larger awards. Such listing hardly helps us here, as triers of the fact could have chosen (and apparently here they did) to discount disfigurement and future disability. To put a low figure on pain and suffering has never been grounds for reversal as such. Indeed, plaintiff herself testified that she was able to get around without difficulty and had no problem with standing or walking. And a jury might even conclude (as this one must have) that she has less discomfort now than before.

■■  SECOND: Plaintiff argues that the court should have admitted evidence of thrombophlebitis in May and October following surgery. If such was improper then so is the $1,000 verdict. In rejecting this testimony, the court concluded that it was conjectural and speculative in the extreme, and hence irrelevant. One Doctor Panella in particular testified that it would be "pure speculation" that there was indeed any nexus. He had treated plaintiff for thrombophlebitis in October. He was asked whether the surgery might or could have caused the thrombophlebitis; his answer was that he had no opinion, or rather that he could not form an opinion, and when it was cast in a hypothetical form he answered that the surgery "could" have caused this condition. But he stated on cross-examination that any opinion as to the cause of this condition in October, was "purely speculation" and "no way to any degree of reasonable medical certainty could" he attribute the cause of the thrombophlebitis, and that it was really a conjecture and guess upon his part as to the cause in either October or May. On redirect the medical witness stated that by speculation he meant that he didn't "have any certainty whether it was due to the surgery or was due to her work or was due to an accident that she had and she didn't even pay any attention to it."

Plaintiff cites *Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236, 166 N.E.2d 582, 587, for the proposition that answers to hypothetical questions need not be positive and that the use of the words "might" or "could" does not necessarily render testimony conjectural. That as it may be, the statements set forth above by Dr. Panella did not give a basis for the jury to infer what the cause of the phlebitis was and if

there was no evidence for them to infer that the surgery in March caused the phlebitis, it was irrelevant as we have said. Accordingly, the expenses incurred in treating this condition, resultant loss of income and recompense for pain and suffering could not enter into the jury's computation of damages.

Plaintiff relies heavily on *Kelly v. Reynolds* (1971), 132 Ill. App. 2d 1098, 271 N.E.2d 370, where we held that if there is uncontradicted evidence of medical expenses and lost wages, of permanent injuries and pain and suffering, there can be little doubt that a verdict for less than the "uncontradicted out-of-pocket expense is manifestly inadequate—indisputably insufficient." This reliance on *Kelly*, we think, is misplaced. The income loss testified to by plaintiff suffered from inexactitudes, to put it mildly, and lack of records (she was self-employed). Thus, the verdict was not for *less* than the special out-of-pocket expenses as in *Kelly* as we compute it—and as the jury must have computed it. That being so, pain and suffering and disfigurement made up the admittedly small balance remaining to reach $1,000 and as small as this award is we do not feel justified in reversing it.

■■  THIRD: With regard to the directed verdict in favor of the hospital—there was more to the court's reasoning in directing such than its failure to find an agency relationship. *Darling* obviously entered into the court's consideration; that is, that the hospital was not negligent in doing or failing to do procedures that would have prevented the infection. Plaintiff says, on the other hand, that the hospital was negligent in that its nurses did not check for circulatory impairment, though the ends of the toes were exposed for this very purpose. In addition, she states that the nursing personnel should have advised the hospital authorities that she was suffering severe pain following the surgery. The trouble with this theory is that there is very little evidence to support it. Even plaintiff testified that she couldn't remember what the nurses had done and thought that they had looked at the toes and possibly touched them. Just because infection set in doesn't mean, *per se,* that the hospital or the doctor were negligent. The nurses did in fact call the doctor's attention to the pain the plaintiff was experiencing and in response he took an X ray to see if anything was amiss. He found nothing. The fact that pain itself followed the surgery was to be expected. These facts bear little relationship to *Darling* where the cast was too tight and circulation became impaired necessitating amputation. That hospitals have a duty to patients aside from any agency relationship with its medical staff is indeed true and this is what *Darling* stands for. But in that case as opposed to this, tests for circulation were inadequate, skilled nurses would have recognized the impairment, and at that point it would have been their duty to inform the attending physician and to advise the hospital

authorities if he failed to act. That is far different from the facts before us. Plaintiff had the burden of showing that the hospital was negligent by the *Darling* criteria and that such negligence caused her injury. Here, there was no evidence that the hospital should have acted in a fashion other than it did. In short, if the hospital here had a duty to do more, there was no such proof.

Affirmed.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, concurring in part and dissenting in part:

I am in agreement with the majority opinion except as it relates to the issue of damages. Upon that issue, I would reverse and remand for a new trial.

In this case, the so-called "special damages" or out-of-pocket expenses amount to $774. The jury verdict of $1,000 leaves only $226 more than the specials, and that $226 has to compensate for the disfigurement, the permanent injuries, the pain and suffering—$226 for those items of damages as shown by this record is palpably inadequate. There is no reasonable relationship between the damages returned and the loss suffered by the plaintiff. Such verdict could only result from passion or prejudice or a misapprehension of the measure of damages. Under either circumstance, the plaintiff is entitled to a new trial upon the issue of damages only. See *Rapp v. Kennedy* (1968), 101 Ill. App. 2d 82, 242 N.E.2d 11; See generally 11 A.L.R.3d 370.