BRUCE ALLEN PALMER, a Minor, by his Guardian and Next Best Friend, Wade Palmer, Plaintiff-Appellee, *v.* AVCO DISTRIBUTING CORPORATION, Defendant-Appellant.

First District (3rd Division)    No. 78-394

Opinion filed August 8, 1979.—Rehearing denied September 17, 1979.

RIZZI, J., concurring in part and dissenting in part.

Lord, Bissell and Brook, of Chicago (Richard E. Mueller, Richard F. Johnson, and Norman J. Lerum, II, of counsel), for appellant.

Joseph A. Rosin, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This was an action for damages arising from injuries sustained by the 11-year-old plaintiff, Bruce Allen Palmer, when his leg was caught in the agitator mechanism of a fertilizer spreader designed and manufactured by defendant, Avco Distributing Corporation. A jury returned a verdict for plaintiff against Avco in the amount of $492,000. The trial court denied Avco's motion for judgment *n.o.v.* and entered judgment on the verdict. The trial court also denied Avco's motion for partial satisfaction of the judgment in the amount of $273,000. Avco appeals. Plaintiff cross-appeals from the trial court's denial of his post-trial motion for an additur of $250,000 or, in the alternative, for a new trial on the issue of damages only.

The machinery involved in the injury is known as the Avco Model 114, a fertilizer spreader designed in 1964 and manufactured in 1966. The Model 114 consists of a hopper, 74 inches high, 77 inches long and 93 inches wide, which rests on a two-wheeled frame designed to be pulled by a tractor. The hopper can hold up to 8,000 pounds of fertilizer. Two sides of the hopper are angled at 40 degrees so that the fertilizer will run through the spreader.

An agitator, 5 feet in length, is located at the bottom of the hopper. If engaged, the agitator moves only when the spreader is being pulled forward by a tractor. As the spreader is pulled forward, the agitator guides fertilizer into openings at the bottom of the hopper. It also breaks up lumps of fertilizer caused by dehydration.

Running parallel over the length of the agitator is a baffle which consists of two 4-inch sides joined at a 90 degree angle. The baffle serves to relieve the pressure placed on the agitator by the weight of the fertilizer without restricting the flow. The edges of the baffle are approximately 5 inches from the sides of the hopper. Viewed from above, the placement of the baffle conceals the agitator mechanism.

Running lengthwise across the top of the hopper is a metal bar designed to hold a canvas cover for the hopper. While it is an optional feature, this bar was on the Model 114 involved in the occurrence.

The Avco Model 114 was designed to be operated by one man. From his position in the tractor seat, the operator has all the spreader controls within reach, including a lever which disengages the agitator even when the spreader is being pulled forward.

A warning sign, using the language recommended by the standards of the American Society of Agricultural Engineers, was attached to the front of the hopper. This sign read:

"BE CAREFUL
1. Keep all shields in place.
2. Stop machine to adjust and oil.
3. When mechanism becomes clogged disengage power before cleaning.
4. Keep hands, feet and clothing away from power-driven parts.
5. Keep off implement unless seat or platform is provided. Keep others off."

On April 27, 1973, plaintiff, then 11 years old, and his brother, aged 13, accompanied Allen Miller and his two sons to the Edward Kalvelage farm for the purpose of borrowing Kalvelage's Avco Model 114 spreader. Miller brought the Model 114 back to his farm and proceeded to transfer fertilizer from his spreader to the Model 114. Miller and the four boys shoveled a full load of fertilizer into the Model 114, breaking up chunks of fertilizer as they did so. The Model 114 was then pulled out to the field. Miller was driving the tractor; one of his sons and the two Palmer boys were riding on the top of the spreader. Plaintiff testified he was riding on the spreader just for something to do. After approximately 40 or 50 minutes, Miller stopped the tractor and his son climbed out of the hopper. After Miller started up the tractor again, plaintiff, while holding the bar above the hopper, caught his left leg in the agitator mechanism at the bottom of the hopper. Because of the positioning of the baffle, plaintiff neither saw nor knew of the existence of the agitator beneath. Miller knew about the agitator, but never warned the children. As a result of the accident, plaintiff suffered amputation of his left leg below the hip.

Plaintiff's complaint named Avco and International Minerals & Chemical Corporation, the distributor of the Avco Model 114, in a products liability suit. Plaintiff also filed suit against Miller, Miller Farms, Inc., and Kalvelage. Miller filed a third-party complaint against Avco and International Minerals seeking indemnity in the event that Miller and Miller Farms were found liable to plaintiff.

Prior to the commencement of trial, plaintiff entered into a loan agreement with Miller, Miller Farms, Kalvelage, and their liability insurance carrier, Country Mutual Insurance Company. (We shall set forth the terms of the loan agreement later in this opinion.) Those defendants were thereupon dismissed from the suit. Plaintiff also entered into a loan agreement with International Minerals, and it was dismissed as a defendant.

At trial, both sides presented testimony as to whether plaintiff's use of the fertilizer spreader was reasonably foreseeable and whether the Avco

Model 114 was unreasonably dangerous. Three witnesses, Allen Miller, Wilmer Halfeldt and Ron Reichert, testified for plaintiff that they owned farms. Each had ridden on fertilizer spreaders, either for the purpose of breaking up clumps of fertilizer or just to go along for a ride. All three witnesses testified that they had seen farmers, farm personnel, and other persons riding on spreaders.

Gene A. Honn, an adviser with the department of agriculture of the University of Illinois, Dr. Norval Wardle, a retired professor of agricultural and safety engineering at the University of Iowa, and Dr. John Siemens, a professor of agricultural engineering at the University of Illinois, testified as expert witnesses on behalf of plaintiff. Honn testified that while travelling throughout Illinois he had noticed farm personnel riding on fertilizer spreaders. Honn had personally ridden on spreaders of various types.

Dr. Wardle testified that he had seen farmers riding on fertilizer spreaders for the purpose of breaking up clumps of fertilizer. Dr. Wardle expressed an opinion, based upon a review of literature pertaining to the Avco Model 114 and an inspection of the spreader itself on the morning before testifying, that the Avco Model 114 was unreasonably dangerous for the following reasons: fertilizer has a tendency to clog; the baffle gives a false sense of security because it appears to guard the agitator; the agitator is not in fact guarded, but is open 5 inches on each side of the baffle; the operator's manual does not contain instructions informing the farmer about the problem of clogging; and the warning on the spreader does not specifically draw attention to the hazard of the agitator at the bottom of the hopper.

Dr. Siemens concluded that the Avco Model 114 was unreasonably dangerous based upon his inspection of it and the relevant literature. His reasons underlying this conclusion were substantially the same as those given by Dr. Wardle. Dr. Siemens had never seen anyone riding on a fertilizer spreader while it was in use, but his opinion was based on such a possibility.

Both witnesses offered suggestions for alternative designs of both the agitator mechanism and protective covering. These alternative designs had not been tested and both witnesses agreed extensive testing would be necessary to determine the feasibility of such alternatives. Neither witness was a licensed engineer.

Three witnesses, Dean Johnson, Jack Watson, and Murlin Tuotten, testified on behalf of Avco. They were farmers and had neither ridden nor seen anyone ride in the hopper of a fertilizer spreader for any purpose. The standard practice is for the operator to stop the tractor and break up clumps of fertilizer while the spreader is stationary.

Ralph Morr, an engineer with Avco, testified that in his opinion the

Avco Model 114 is not unreasonably dangerous for its intended use. Morr based his opinion on the fact that the Model 114 was designed to be operated by one man and that the agitator would stop automatically if the operator stopped the tractor. Thus, the agitator would pose no threat to the operator if he had to get inside the hopper to break up the clumps of fertilizer. Neither Avco nor any company had tested or utilized the suggestions for alternate designs made by plaintiff's experts. Morr was of the opinion that none of the alternatives suggested were technically feasible. A prototype of Model 114 was tested for three years in the field by Avco personnel before it was marketed. During that period, there were no reports of injuries resulting from use of the machine.

Randall C. Swanson, a farmer and part-time agricultural consultant, testified for Avco. Swanson concluded that the Model 114 was not unreasonably dangerous for its intended use for several reasons. First, an injury cannot occur inadvertently because a person can come into contact with the agitator at the bottom of the hopper only by intentionally getting into the hopper. Secondly, the warning placed on the machine was adequate because it advised the operator as to its operation and cautioned against cleaning or adjusting it when parts were moving. Finally, since the Model 114 was designed to be operated by one man, there was no reason for any other person to be involved in its operation. Swanson believed that allowing children to ride in the hopper indicated a complete disregard for their safety on the part of the operator.

Defendant initially contends that, as a matter of law, Avco was under no duty to design a fertilizer spreader so as to prevent injury arising out of an unintended use. Avco maintains that the scope of Model 114's intended use is not broad enough to include the activity of an 11-year-old boy riding in the hopper. Citing *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1, Avco argues that plaintiff's action in strict tort liability must fail because the occurrence giving rise to his injury was not "objectively reasonable to expect" when the spreader was put to its intended use. In *Winnett* a four-year-old child was injured when she placed her fingers in the conveyor belts of an operating farm forage wagon. In affirming the trial court's dismissal of plaintiff's complaint, the supreme court, holding that the occurrence was not foreseeable, stated at pages 12-13, "Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur."

■■ When plaintiff's cause of action sounds in strict tort liability and the defense of misuse is raised, the question becomes whether such "misuse" was foreseeable by a reasonably prudent manufacturer. A manufacturer may be liable for a use that is not intended, in the strict sense, if from the circumstances it appears that the manufacturer knew or should have known of such use. (*Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 369

N.E.2d 1284, *affirmed in part, reversed in part on other grounds* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) Whether a particular use is objectively reasonable to expect is normally a question of fact for the jury's determination. *Kerns v. Engelke.*

■■ We believe sufficient evidence was adduced at trial to permit the triers of fact to determine it was objectively reasonable to expect that farmers, farm personnel and children would ride in the hopper of the Model 114 spreader. Four witnesses testifying for plaintiff stated that they personally had ridden on fertilizer spreaders and that they had seen other persons riding on such spreaders. Dr. Wardle also testified that he had seen persons riding on fertilizer spreaders. Unlike *Winnett*, where there was an isolated incident of a child being in the vicinity of potentially dangerous machinery, the evidence indicates here that it was somewhat common practice, of which Avco knew or should have known, for persons, including children, to ride in the hopper of a fertilizer spreader.

■ Moreover, we believe there was sufficient evidence to warrant the jury's determination that the Avco Model 114 spreader, at the time of the occurrence, was unreasonably dangerous for its foreseeable use. Dr. Wardle, plaintiff's expert witness, so concluded based on the facts that the baffle concealed the presence of the agitator and that the attached warning did not specifically call attention to the hazard of the agitator. Dr. Wardle's conclusion was supported by Dr. Siemens.

It was the jury's province to determine, first, whether the use to which the spreader was being put at the time of plaintiff's injury was objectively foreseeable and, secondly, if it was, whether the spreader was unreasonably dangerous for this foreseeable use. We cannot say that the evidence, when viewed in the light most favorable to plaintiff, so overwhelmingly supports a verdict for Avco that a contrary verdict cannot stand. Consequently, the trial court did not err in denying Avco's motion for judgment *n.o.v.*

Avco next contends that the trial court erred in denying its motion for partial satisfaction of judgment in the amount of $273,000, the amount of the payments under two loan agreements.

By the terms of the loan agreement plaintiff entered into with Miller, Miller Farms, Kalvelage and their liability insurance carrier, Country Mutual Insurance Company, Country Mutual agreed to advance to plaintiff the sum of $266,000 as an interest-free loan repayable upon the following terms:

> "Repayment shall be made only in the event that a judgment is rendered against Avco Distributing Corporation, in favor of the Plaintiff, Bruce Allen Palmer, in excess of Five Hundred Thousand ($500,000) Dollars and collection actually made thereon, and then only to the limited extent of Twenty (20%) Percent that the actual

net recovery and collection exceeds said sum of Five Hundred Thousand ($500,000) Dollars."

In return, Miller, Miller Farms and Kalvelage were dismissed from the suit and plaintiff agreed not to execute any contemplated judgment against those parties. The agreement also contained a clause declaring it was the specific and unqualified intent of the parties that the transaction be deemed a loan and not a release by plaintiff of a claim against the defendants or a covenant not to sue. Full disclosure of the existence and terms of the loan agreement was made to the trial court and Avco three days before trial began. Plaintiff also entered into a loan agreement with International Minerals in exchange for $7,500. The terms of this agreement do not appear of record.

Avco, in effect, seeks to treat the agreements as covenants not to sue which, under well-established law, must be deducted from any judgment obtained against the remaining defendant. *Hayes v. Abernathy Taxi Association, Inc.* (1972), 8 Ill. App. 3d 367, 290 N.E.2d 289; *Kurth v. Amee, Inc.* (1972), 3 Ill. App. 3d 506, 278 N.E.2d 162.

In *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, the case which first sanctioned the use of loan agreements, the court also made clear that they are not proper under all circumstances. In *Reese* there were two defendants, either of whom could have been directly liable to plaintiff for the entire amount of the judgment. Despite the fact that it was questionable whether the contracting defendant could have obtained indemnity from the non-contracting defendant, the court upheld the validity of the agreement which would, in effect, shift the entire loss to the noncontracting defendant in the event plaintiff prevailed. The following factors were deemed important: (1) the agreement was entered into before trial; (2) the contracting defendant was dismissed from the case so as not to confuse or mislead the jury; and (3) the existence and terms of the agreement were brought to the jury's attention.

Subsequent cases have held loan agreements void where one or more of the above factors were lacking. In *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58, the court invalidated the loan agreement, holding that it constituted an attempt at indirect indemnification, under circumstances where indemnification would not have been proper. The loan agreement had been entered into by plaintiff and a co-defendant after judgment was obtained against both defendants and after the contracting defendant had failed to prevail on its counterclaim and third-party claim. Similarly, in *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 369 N.E.2d 1284, *affirmed in part, reversed in part on other grounds* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, agreement was held void where no claim for indemnification had been made by the contracting

defendants. This court, citing *Harris*, noted that the loan agreements should be limited to "situations where the contracting defendant might otherwise be entitled to indemnification or to prejudgment situations where the liability of the parties has not been determined." (54 Ill. App. 3d 323, 340. See also *Rucker v. Norfolk & Western Ry. Co.* (1978), 64 Ill. App. 3d 770, 381 N.E.2d 715.) In *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23, *cert. denied sub nom. Gatto v. Calumet Flexicore Corp.* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669, the defect lay not in the agreement, but in plaintiff's failure to dismiss the contracting defendants and reveal the existence and terms of the agreement to the trial court, opposing counsel and the jury. Moreover, the noncontracting defendant could not have been held directly liable to plaintiff. The trial court was therefore placed in the position of trying a nonexistent controversy between parties which had secretly resolved their claims.

■■ The foregoing cases are readily distinguishable from the present case. The circumstances surrounding the execution of the loan agreements between plaintiff and Country Mutual and between plaintiff and International Minerals comport with the requirements of *Reese*. The agreements were entered into prior to trial before the liability of any of the co-defendants had been determined. Avco could have been sued individually and held directly liable to plaintiff. There was no attempt at concealment of the existence and terms of the agreements, and the contracting defendants were promptly dismissed from the suit. Under the circumstances of this case the utilization of loan agreements was permissible.

Avco asks us next to look not at the circumstances surrounding the execution of the loan agreement with Country Mutual, but at the terms of the agreement itself. Avco maintains that the fact that plaintiff's obligation of repayment is conditioned upon execution of judgment against Avco in excess of $500,000 invalidates the agreement and warrants a reduction in the judgment against Avco in the amount of the loan. We do not agree.

The existence of the loan agreement was first brought to the jury's attention during Avco's cross-examination of Miller. On redirect examination, the jury was informed that Country Mutual would not recover any portion of the loan if the verdict against Avco was less than $500,000. It was explained that Country Mutual would recover the full amount of the loan in the event there was a verdict for $1,800,000. Plaintiff thereafter called counsel for Country Mutual who testified to the circumstances surrounding the execution of the loan agreement and explained its terms in greater detail.

■■ That repayment is conditioned upon an event which may or may not occur, in the present instance, a verdict greater than $500,000, does not, in

our opinion, alter the essential character of the transaction as a loan. Nor do we believe the fact that Country Mutual is not repaid dollar for dollar out of any verdict against Avco renders the loan agreement invalid. The unique provisions of the present agreement eliminate what the dissenters in *Reese* termed an "unwholesome effect" of loan agreements: the shifting of the entire loss to one party. Under the agreement in the present case, Country Mutual agrees to bear at least a portion of the loss to the extent that the verdict against Avco is less than $1,800,000. Thus, the contracting defendant is not entirely absolved of responsibility for plaintiff's loss.

Moreover, Avco does not argue that a loan agreement such as the one entered into in *Reese* would have been improper in the present case. Its objections are based solely on the conditional nature of plaintiff's obligation to repay. Yet, had plaintiff and Country Mutual executed the type of agreement approved in *Reese*, Avco would be in exactly the same position it occupies under the present agreement. Avco would still be obligated to pay to plaintiff the entire amount of the present judgment. The only party to gain from a *Reese*-type agreement would be Country Mutual; it would be repaid completely out of the recovery had by plaintiff against Avco. Consequently, we do not understand Avco's attempt to benefit from County Mutual's voluntary waiver of repayment in the event the amount is less that $500,000.

■■ Nor do we believe that the type of agreement executed in the present case results in a double recovery for plaintiff. In a different context, in *Henson Robinson Co. v. Industrial Com.* (1944), 386 Ill. 232, 53 N.E.2d 881, it was held that even though an employer is entitled to credit for Workmen's Compensation benefits paid in the event the injured employee recovers from a third party, the employer may waive the right to indemnification. The result was that the employee was allowed to retain not only the amount of the settlement or recovery from the third party, but also the amount of benefits paid. The court found that since the employer had the right to demand indemnification out of the amount recovered from the third party, there necessarily existed the concomitant right to waive indemnification and that this did not constitute a double recovery. Similarly, under the loan agreement, the right of indemnification, and thus the right to waive indemnification, belongs to Country Mutual. We do not believe the fact that the waiver is written into the instrument in any way alters Country Mutual's position. Avco, in effect, seeks to benefit from the provisions of a voluntary, private agreement by which Country Mutual agrees to underwrite, to a certain extent, plaintiff's loss. We find nothing covert or inequitable in a private agreement to waive indemnification which would warrant a reduction of the judgment against Avco to the extent of the waiver. Consequently, we hold that Avco is not entitled to a partial reduction of judgment.

We also must comment on Avco's contention that the loan agreement must be considered a covenant not to sue. Avco first alluded to the existence of the loan agreement during its cross-examination of Miller. Such questioning was proper to show bias on the part of the witness. (*Casson v. Nash* (1978), 74 Ill. 2d 164, 384 N.E.2d 365.) Plaintiff was then properly permitted to place all the terms of the loan agreement before the jury, subject to an appropriate limiting instruction. (*American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 371 N.E.2d 232.) Were we to hold that the agreement was, in fact, a covenant not to sue, mention of the agreement by Avco would have constituted reversible error (*American State Bank v. County of Woodford*), and Avco would not be allowed to profit from its own error in the form of a reduction of the judgment against it.

Plaintiff has cross-appealed from the trial court's denial of his motions for an additur of $250,000 or, in the alternative, for a new trial on the issue of damages only.

Dr. Anthony L. Brown testified for plaintiff that he was plaintiff's treating physician. Plaintiff's left leg was amputated below the hip. Plaintiff remained in the hospital from April 27 to June 15, 1973. As a result of the amputation, plaintiff required several skin grafts. Dr. Brown's bill totalled $1,800. Plaintiff's mother testified that the total medical expenses amounted to $17,275.

Dr. Jack Arbit, a clinical psychologist, testified as to the psychological effect of the injury upon plaintiff. Plaintiff manifested feelings of anxiety and depression and further counseling and psychotherapy would be necessary.

John Henderson, an economist, testified on the subject of plaintiff's future earning potential. He stated that, in general, employers are more unwilling to hire a handicapped person just entering the labor market than they are to continue to employ a person who became handicapped in the course of his employment. He projected plaintiff's future lost income at the minimum of $340,836.

■ Courts are reluctant to interfere with the discretion of the jury as to the amount of damages to be awarded, and generally we will not overturn the jury's finding for inadequacy of its award unless the award is palpably inadequate or one against the manifest weight of the evidence. (*Kelley v. Cross* (1967), 79 Ill. App. 2d 342, 223 N.E.2d 555.) The discretion of the jury should not be interfered with as long as the assessment of damages is within the range of the evidence, the instructions proper, and there is no improper exclusion of evidence. (*Brown v. St. John's Hospital* (1977), 51 Ill. App. 3d 1044, 367 N.E.2d 155.) In the present case, the jury considered the evidence as to damages and rendered its verdict. There is a reasonable relationship between the

damages awarded and the injuries sustained by plaintiff. We cannot say that the jury's verdict is inadequate.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY, J., concurs.

Mr. JUSTICE RIZZI, concurring in part and dissenting in part:

I concur with the majority in its analysis and conclusion regarding the denial of the defendant's motion for judgment *n.o.v.* However, I cannot agree with the majority regarding the agreement entered into between the plaintiff and Allen Miller, Miller Farms, Edward Kalvelage and Country Mutual Insurance Co. I believe the agreement is a hybrid agreement, and, therefore, the principles applicable to both types of agreements must be applied accordingly. As a result, I would reverse and remand the case for a new trial on damages only.

Pursuant to the agreement, Country Mutual paid the plaintiff $266,000 in exchange for a dismissal of the plaintiff's action against the defendants that were insured by Country Mutual; these defendants included Miller, Miller Farms and Kalvelage. The agreement provides that the $266,000 is not to be paid back to Country Mutual unless the plaintiff receives a judgment against Avco in excess of $500,000; the plaintiff is to pay back Country Mutual only 20% of the amount recovered in excess of $500,000. Plainly, by the express terms of the agreement, the $266,000 would not have to be paid back to Country Mutual under the circumstances of this case.

It is my belief that any amount of the $266,000 that the plaintiff does not have to pay back to Country Mutual should be deducted from any judgment against Avco, as would be done if the agreement was a pure covenant not to sue; any amount that the plaintiff has to pay back to Country Mutual should not be deducted from any judgment entered against Avco, as would be done if the agreement was a pure loan agreement. Using this rationale, if this case is not remanded for a new trial, the $266,000 should be deducted from the $492,000 judgment entered against Avco.

If the $266,000 is not deducted from the judgment against Avco, it will allow the plaintiff to recover more than what the jury determined is full compensation for his injury. The unwholesome effect of allowing the plaintiff in a personal injury action to be paid $266,000 more than the jury's verdict is highly disturbing. Not only do I find it unwholesome and disquieting, but in addition, I know of no court that has heretofore held

that a plaintiff in a personal injury action may be compensated for his injury over and above the amount of the jury's verdict. If for no other reason, I would, therefore, require the $266,000 to be deducted from the judgment on the basis of public policy. See *Rucker v. Norfolk & Western Ry. Co.* (1978), 64 Ill. App. 3d 770, 792, 381 N.E.2d 715, 732, *appeal granted* (1979), 71 Ill. 2d 621.

The majority states that it does not believe that its conclusion results in a double recovery for the plaintiff. I disagree. To me the majority is clearly allowing the plaintiff a double recovery. A double recovery is inimical to the salutary principle rooted deeply in our law that for one injury but one satisfaction may be had; an injured party does not have a right to derive a profit from his injury. *McClure v. Lence* (1951), 345 Ill. App. 158, 164, 165, 102 N.E.2d 546, 549, *aff'd after remand* (1953), 349 Ill. App. 341, 110 N.E.2d 695.

The majority relies upon the case of *Henson Robinson Co. v. Industrial Com.* (1944), 386 Ill. 232, 53 N.E.2d 881. *Henson* merely involves the settlement of a personal injury action wherein the employer expressly agreed to waive its indemnification right under the Workmen's Compensation Act; it does not involve joint tortfeasors responsible for a single injury as in the present case. In *Henson,* the court held that the employer was not entitled to a credit for the amount already paid to its injured employee by the personal injury defendant because, in the personal injury settlement, the employer had expressly waived its right to have the amount credited in the Workmen's Compensation claim. Thus, *Henson* was decided solely on the basis of an express waiver agreement. The court did not discuss the question of a double recovery and the case has never been cited or relied upon for that proposition. In the present case, Avco was not part of the agreement between Country Mutual and the plaintiff; it did not agree to waive the right to have any amount already paid to the plaintiff deducted from the jury's verdict. Clearly, the agreement between Country Mutual and plaintiff cannot be treated as if the agreement was between plaintiff and Avco, which is, in effect, what the majority is doing. Avco has the right to deduct from the judgment the amount plaintiff does not pay back to Country Mutual, irrespective of the agreement between Country Mutual and plaintiff. This is illustrated by the Restatement (Second) of Torts §885, Comment e (1979), wherein it is stated:

> "Payments made by one of the tortfeasors on account of the tort either before or after judgment, diminish the claim of an injured person against all others responsible for the same harm. *This is true although it was agreed between the payor and the injured person that the payment was to have no effect upon the claims against the other.* If the payment is made as full satisfaction for a specified

item of damage, the claim against the others is terminated with respect to that item. If it is agreed that the payment is to satisfy the payor's proportion of the total claim, the claim against the others is diminished in that proportion, if this is greater than the amount paid; if the proportion is less than the amount paid, the claim against the others is diminished by the amount paid, *irrespective of the agreement.*" (Emphasis added.)

For these reasons, I do not believe *Henson* is applicable to this case.

The majority also relies upon *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, but there is a crucial difference between *Reese* and the present case. In *Reese,* the court did not allow a personal injury plaintiff to recover more for his injury than the amount of the jury's verdict. I, therefore, do not find *Reese* applicable to the present case, except for the fact that *Reese* allows *the use* of loan agreements for personal injury actions in Illinois. The use of loan agreements in personal injury actions, however, is not unlimited. As an example, in *Kerns·v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, the supreme court recently held that the use of loan agreements is proper only where judgment has not been reached. In *Kerns,* the supreme court held that the loan agreement which had been entered into after judgment was void and that the money that had been advanced to the plaintiff pursuant to the loan agreement acted as a partial satisfaction of the plaintiff's judgment against another defendant.

In this case, the plaintiff contends that the $266,000 should be considered a loan, even though it is not to be paid back to Country Mutual, because the instrument is labeled a "Loan Agreement" and the language used in the context of the instrument refers to the $266,000 as a loan. I disagree. Although the words used in a written agreement should, of course, be considered in construing the instrument, it is well established that the legal effect to be given an instrument is not to be determined by the label which it bears or the technical terms it contains. (*Urban Investment & Development Co. v. Maurice L. Rothschild & Co.* (1975), 25 Ill. App. 3d 546, 551, 323 N.E.2d 588, 592; *Bonde v. Weber* (1955), 6 Ill. 2d 365, 377, 128 N.E.2d 883, 889.) Equally important, the parties to an agreement cannot expect its terms to be judicially enforced if the effect would be repugnant to public policy.

In determining the legal effect to be given the terms of a "Mary Carter" type agreement,[1] I believe the underlying principle should be to allow the plaintiff only one full compensation for his injury. (See *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1972), 5 Ill. App. 3d 450, 456-

---

[1] Loan agreements in personal injury actions are commonly referred to as "Mary Carter" agreements, obtaining their name from *Booth v. Mary Carter Paint Co.* (Fla. 1967), 202.So. 2d 8. See generally Michael, *"Mary Carter" Agreements in Illinois*, 64 Ill. B. J. 514 (1976).

57, 283 N.E.2d 517, 521, *aff'd* (1973), 55 Ill. 2d 356, 303 N.E.2d 382; *American State Bank v. County of Woodford* (1978), 55 Ill. App. 3d 123, 135, 371 N.E.2d 232, 241.) The only way the agreement in this case can be construed to allow the plaintiff only one full compensation for his injury is to hold that any amount of the $266,000 that the plaintiff does not have to pay back to Country Mutual is to be deducted from any judgment against Avco; any amount that the plaintiff has to pay back to Country Mutual should not be deducted from any judgment against Avco. In my opinion, the agreement in this case should be given this effect.

The record reflects that both parties were represented by exceptionally able trial counsel. As one might expect, they attempted and did use the hybrid agreement to their respective advantage. Counsel for Avco alluded to the existence of the agreement during his cross-examination of Allen Miller. This was proper to show that the witness was possibly biased. (*Kerns*, 76 Ill. 2d 154, 169; *cf. Casson v. Nash* (1978), 74 Ill. 2d 164, 168-69, 384 N.E.2d 365, 366-67.) On redirect examination of Allen Miller, plaintiff's counsel sought to tell the jury the full terms of the agreement. Plaintiff's counsel then called as a witness, John P. Burke, counsel for Country Mutual, for the purpose of explaining and placing all the terms of the agreement before the jury. Burke testified that the plaintiff would have to repay the $266,000 only if the verdict exceeded $500,000, and only 20% in excess of $500,000 would be repaid. The procedure used by plaintiff's counsel was proper because once the existence of a loan agreement is placed before the jury, then the full effect of the agreement must be given to the jury. This principle is illustrated by *American State Bank*, 55 Ill. App. 3d 123, 134-35, 371 N.E.2d 232, 240, wherein the court stated:

> "Since *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, the admissibility and use of loan agreements have not been open to serious questions. There appears to be no general consensus of the bar as to the wisdom as a trial tactic of either admission or use. *However, once the decision to offer has been made, the moving party must take the bitter with the sweet as with any piece of evidence.*
>
> *To allow only a portion of the agreement into evidence would be to permit the jury to speculate as to the reasons or circumstances for making and accepting the loan. Therefore, the entire agreement must be placed before the jury with an appropriate limiting instruction.* This is the procedure dictated by *Reese.*
>
> * * *
>
> The trial court was correct in ruling that *the entire agreement, not just portions of it, must be introduced into evidence if anything*

*concerning the agreement is to be submitted to the jury."* (Emphasis added.)

In the present case, both trial counsel took full forensic advantage of the existence of the hybrid loan agreement. But the jury was not fully informed of the effect of the agreement regarding the $266,000. Since the jury was advised that the plaintiff received $266,000 and it would have to be repaid only if he received a verdict in excess of $500,000, the jury should also have been informed that any amount of the $266,000 that the plaintiff did not have to pay back to Country Mutual would be deducted from the amount of any verdict against Avco.

Under the circumstances that occurred in the trial, the jury was left with the improper impression that if it returned a verdict for $492,000, the plaintiff would keep the $266,000 and receive an additional $492,000. This was error requiring a new trial since we should not speculate as to what the jury would have awarded the plaintiff if it was fully informed as to the effect of the agreement with regard to the $266,000. In this regard, it is worth noting that the jury, having heard repayment would be made under the agreement only in the event the verdict exceeded $500,000, returned a verdict for the plaintiff just under that repayment level.

The question remains as to whether the plaintiff should have a new trial on damages only or whether a new trial generally is required. In this regard, the error relating to the hybrid loan agreement would only have affected the jury's award of damages. The error does not go to the question of liability and the record does not indicate that the verdict was compromised. Also, although the issue of liability was vigorously contested, the verdict on liability is amply supported by the evidence. Under the circumstances, a new trial on damages only is appropriate. (See *Balestri v. Terminal Freight Cooperative Ass'n* (1979), 76 Ill. 2d 451, 456, 394 N.E.2d 391, 393.) In view of my conclusion, I do not address the other issues raised on appeal. Accordingly, I would affirm the judgment on the issue of liability and remand the case for a new trial on damages only.