DAVID ROBIN *et al.*, Plaintiffs-Appellants, *v.* DOROTHY J. MILLER, Defendant-Appellee.

First District (3rd Division) No. 76-482

Opinion filed December 13, 1978.

Irving Fasman, of Horwitz, Anesi, Ozmon & Associates, of Chicago, for appellants.

Joseph Lederleitner and Robert M. Chemers, both of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiffs, David Robin, Edward Randell and Jill Randell, brought this action against Dorothy Miller to recover damages for injuries suffered as a result of an automobile accident. The case was tried before a jury and a verdict was returned in favor of the plaintiffs, awarding damages of $14,000 to Robin, $800 to Edward Randell and $100 to Jill Randell. A judgment order was entered on the verdict. Robin and Edward appeal from the judgment entered contesting the sufficiency of their damage awards.

Edward Randell testified that the accident occurred at 8 p.m. on December 3, 1970, at approximately 3300 South Lake Shore Drive, Chicago. At this location the drive has four northbound lanes and four southbound lanes separated by a grass-covered median strip approximately 30 feet wide. He testified that he heard a loud crash, and immediately thereafter the Wallace car, which was to his left, crashed into the left front of his car. This second impact caused the Randell car to be pushed to the right colliding with the Robin vehicle. Jill Randell's and Robin's testimony was substantially the same as the testimony of Edward Randell. Wallace testified that as he was driving north in the lane closest to the median strip, he saw lights from the Miller car coming toward him across the median strip. The Miller car struck his automobile and the impact caused him to strike several cars as he went across the northbound lanes.

Miller, who was called to testify as an adverse party, stated that she was traveling in the easternmost southbound lane on Lake Shore Drive when a car entered the southbound lanes at 31st Street. This car crossed into the lane next to the one in which she was driving, but its left turn

signal continued to flash. Miller claims she followed this car for approximately five or six minutes. Suddenly it crossed into her lane, causing her to collide with it. According to Miller only two automobiles were involved in the accident, and both cars were traveling south. As to the identity of the driver of the car which allegedly cut her off, the following colloquy took place:

"Q. [Plaintiff's attorney]. And you found out that the driver of the car which cut you off, was David Wallace, didn't you?

A [Miller]. That's what—who he said he was.

Q. That's the name he gave you? That's the name he gave the police, didn't he?

A. I think it was David L. Wallace."

According to Wallace's testimony, Miller, Wallace and his wife went to Michael Reese Hospital in an ambulance following the accident. Robin also went to Michael Reese, but was driven by a spotter for a towing company who had stopped at the scene of the accident. The Randells drove to Skokie Valley Hospital, which was located near their home. Miller, however, claimed that she was driven to Michael Reese in a police patrol car with the Wallaces and another young man named Samuel Lee.

Robin claimed that as a result of the accident he sustained a permanent injury to his left wrist. At the hospital, following the collision, X rays were taken of his left wrist, head and neck, and he was examined by a staff doctor who wrapped the wrist in a bandage. The next day Dr. Samuel Willens placed Robin's arm in a cast. The cast was removed about five weeks later. After a few weeks, the wrist was still painful and he was unable to move it. About 10 weeks after the accident, a second cast was placed on the wrist for an additional five weeks. He also received steroid injections from Dr. Willens. The wrist has a cracking or grating sound. After the second cast was removed, Robin was fitted with a brace, which he wears every day.

Two treating orthopedic surgeons testified as to the extent of Robin's injuries, Dr. Samuel E. Willens and Dr. Shahan K. Sarrafian. Dr. Willens stated that he examined and treated Robin on several occasions between the time of the accident and May 1971. He also saw Robin in July 1975. In his examinations he found Robin's wrist to be painful and a clicking sound was produced whenever Robin attempted to move it. Dr. Willens diagnosed Robin's condition as "a disrupture of the radiocarpal and inner carpal articulation" with "some cartilage damage to the articular surface." He stated his belief that this condition is related to the automobile accident and is permanent in nature. Dr. Willens also testified that while several surgical treatments were available to relieve the condition they would result in at least some loss in the mobility of the hand and wrist.

Dr. Sarrafian testified that he examined Robin on several occasions

between April 1971 and May 1975. In addition to X ray studies, he conducted extensive kinesiological examinations of the wrist, which consisted of motion studies. He also performed exploratory surgery on Robin's wrist in April 1972. His diagnosis entered on the hospital records following that surgery was that Robin had suffered a "mild chondromalacia" in the wrist. This condition, he felt, was the result of a trauma and the subsequent healing process in the area of the "capitate, third metacarpal and trapezoid." He was unable to diagnose the source of the clicking sounds. Dr. Sarrafian concluded that it was possible the condition in Robin's wrist was causally related to the automobile accident and that it was probably a permanent injury. It was his opinion that Robin should have further medical observation and further medical consultations.

At the time of the accident Robin was enrolled in the Chicago Musical College at Roosevelt University. He was also employed as a guitarist at the Candlelight Theatre. He had played the guitar since he was eight years old and had been a member of the Chicago Federation of Musicians since he was 16. He graduated from Roosevelt University in June 1971.

Robin claimed that the injury to his left wrist interfered with his ability to play the guitar. Following the removal of the second cast, he could practice a little after limbering his arm up with exercises, but his playing had deteriorated. He did not play professionally again until late 1971, when he worked two engagements, each for a period of two weeks. He next worked for a musician/agent named Don Winther, who had been familiar with Robin's playing prior to the time of the collision. Robin played with Winther from April 1972 until January 1973. Winther testified that he replaced Robin because his playing was not of professional quality.

Robin next played professionally for a band led by Jay Gent during the period of April 1973 to August 1974. The cause of Robin's departure appeared to be a conflict with Gent over what material Robin was able to play during the later stages of the performance. A singer with that group testified that over the course of an evening, Robin's ability to play deteriorated markedly. Robin has not played the guitar professionally since August 1974. At that time he started to work in his father's automobile parts store.

As a part of his testimony, Dr. Willens stated that the condition he found in Robin's wrist could interfere with his guitar playing. Dr. Sarrafian likewise testified that the condition he found in Robin's wrist, following his initial visit, would interfere with the playing of the guitar. Later Dr. Sarrafian testified that the condition presently existing in Robin's wrist could possibly interfere with guitar playing. During cross-

examination, however, Dr. Sarrafian stated that "I assume that if one loves the guitar he could still play the guitar with a painful wrist."

As special damages Robin claims lost wages for the 82 weeks he was unable to play the guitar in the period between December 1970 and August 1974. In addition he claims $1,472.33 for medical expenses.

Randell testified that as a result of the accident he suffered from a severe headache and a sore left shoulder. The treating doctor diagnosed his condition as a concussion. The headache continued for approximately a week, during which time he was unable to work. He claimed that the headache still returns sporadically.

At the time of the accident he was employed as a commissioned salesman. Under the terms of his employment he drew $200 per week against his commission. He claimed that as a result of missing one week of work he lost $590 in wages. Likewise, he claimed losses of $74 for car rental while his automobile was being repaired, $75 in medical expenses and $100 deductible payment on his insurance.

Initially, we consider the plaintiffs' argument that they were prejudiced on the award of damages when the trial court improperly denied their motion for a directed verdict on the liability issue. A directed verdict is proper only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Since we feel that, as to the issue of causation, there was evidence upon which the jury could have absolved Miller of liability, we believe that the trial court was not in error in refusing to direct the verdict.

■■■ The essence of Miller's version of the occurrence is that the collision came about when she was cut off by a car which crossed into the lane in which she was driving. Although she did testify that the car, which cut her off, was driven by David Wallace, this testimony was somewhat equivocal and open to the interpretation that it was not Wallace but some unidentified driver who cut her off. While other portions of her story do present significant conflicts with the testimony of other witnesses, we do not believe these conflicts render the "phantom car" theory unreasonable in this case. The jury could have attributed the lack of precision in her story to nervousness or confusion resulting from the accident. In determining the propriety of a directed verdict, the court is constrained to view all of the evidence in a light most favorable to the opponent of the motion, including that evidence relating to the credibility of the witnesses. Viewed in this manner, the evidence in the present case reasonably lends itself to the possible conclusion that the collision was caused when Miller's car was cut off by a vehicle driven by an

unidentified driver and that the existence of this inference raises a question of fact which the jury was entitled to resolve. Therefore, we feel that the trial court's denial of the motion for a directed verdict on the liability issue was not error.

Robin and Randell also raise the issue of whether they are entitled to a new trial on the question of damages because the awards they received are inadequate. They both contend that the amount of the jury award was less than the amount of special damages which they proved and nothing was awarded for disability, nature, extent and duration of the injuries and pain and suffering. Randell claims that while the jury awarded him $800 in damages, he established special damages valued at $839. Robin argues that while his proven special damages exceeded $17,000, he received an award of only $14,000.

The amount of damages lies within the province of the jury and a reviewing court will not overturn its decision unless the amount awarded is palpably inadequate or unless it is clear that the jury disregarded a proven element of damages. (*Ryan v. Hoffman* (1972), 7 Ill. App. 3d 621, 288 N.E.2d 255; *Haleem v. Onate* (1966), 71 Ill. App. 2d 457, 219 N.E.2d 94.) The mere fact that the verdict is less than the claimed special damages does not necessarily mean that the award is inadequate even where the defendant has offered no contradictory evidence; the jury is free to determine the credibility of the witnesses and to assess the weight to be accorded their testimony. (See *Ward v. Chicago Transit Authority* (1964), 52 Ill. App. 2d 172, 201 N.E.2d 750; *Corsello v. Warren* (1964), 51 Ill. App. 2d 367, 201 N.E.2d 155; *Jeffrey v. Chicago Transit Authority* (1962), 37 Ill. App. 2d 327, 185 N.E.2d 854.) The jury was instructed that the items for which compensation was to be determined included the following elements: the nature, extent and duration of the injury, the amount of the disability and disfigurement resulting from the injury, the existence of pain and suffering, necessary medical expenses and lost salaries. The question we must decide is whether based upon the evidence as a whole, the awards properly compensated Robin and Randell for all these injuries.

With respect to Randell, we cannot say that the amount of the award is palpably inadequate. Randell's physical injuries consisted primarily of a concussion which resulted in his suffering from a headache for about a week, although he claimed that the headache would sporadically return. By far the largest element of his claimed special damages was for the $590 in wages he lost during the week he was unable to work. Outside of his own testimony, he offered no grounds to substantiate his calculation. He also testified that as a salesman he was on a weekly draw of $200 commission. Absent any evidence to reconcile the difference between the admitted weekly draw against commission and the amount of the claimed

lost wages, we feel that the jury was justified in concluding that his proven special damages were less than $839. Considering the evidence as to the extent and nature of injuries, the award does not appear to be so inadequate that we would be justified in interfering with the jury's determination.

The situation with respect to Robin, however, is different. By far the largest element of his claimed special damages relates to lost wages; on appeal he contends that he proved at least $16,400 in lost wages. Robin computes this figure based upon the 82 weeks when he was not employed playing the guitar between the date of the accident and the time when he began working for his father on a full-time basis at $200 per week. He suggests the $200 per week figure because that was the amount he was earning from the Candlelight Theatre at the time he was injured. We agree with the defendant Miller that a jury might reasonably conclude that the amount of lost wages actually proved was less than $16,400. From the evidence, the jury could conclude that given the sporadic nature of a musician's employment schedule, Robin may not have worked all 82 weeks even if he had been healthy. At the same time, the evidence also showed Robin did obtain a fairly steady stream of assignments when he was able to play the guitar. We believe that the evidence supports a substantial award for Robin for the value of wages lost as a result of the accident.

Beyond the lost wages, Robin testified to almost $1500 in medical expenses, and there appears to be no reason to question the validity of these claims. The jury award should include these expenses incurred by Robin. In addition, Robin was entitled to recover for pain and suffering and for the permanent nature of his injury. Two casts were applied to his wrist and arm, and exploratory surgery was performed. At the time of trial he was still experiencing pain in the wrist. Both of his treating doctors testified that there is a clicking sound in the wrist and that they are unable to diagnose the cause for this sound. After the second cast was removed, a brace was ordered for the arm and he wears the brace every day. Dr. Willens testified that the condition in Robin's wrist is permanent. He further stated that the pain could be eliminated by surgical treatment but that this would restrict the motion of the hand and wrist. Dr. Sarrafian advised that Robin should continue to have medical consultations.

■■ We believe that the jury failed to compensate Robin for all of the proven elements of damages sustained by him and that the jury award was palpably inadequate. Therefore, we reverse that portion of the jury verdict which awarded Robin an amount of $14,000, and remand this part of the cause for further proceedings in accordance with the views expressed herein.

■■ Robin requested a new trial limited to the issue of damages alone. We

may grant such relief provided we conclude that the damage issue is so separable and distinct from the question of liability that a trial of it alone may be had without injustice. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275.) Since we can see no substantial prejudice befalling Miller by trying the damage question separate from the liability question, we hold that the new trial should be limited to the damage issue.

For the foregoing reasons, we affirm the order of the Circuit Court of Cook County insofar as it awarded Edward Randell $800 in damages. However, we reverse that order insofar as it awarded David Robin $14,000 in damages and remand the case to the Circuit Court of Cook County for further proceedings consistent with the views expressed above.

Affirmed in part; reversed in part and remanded with directions.

SIMON, P. J., and JIGANTI, J., concur.