DONNA LEE, a Minor, by Diane Weaver, her Mother and Next Friend, Plaintiff-Appellant, *v.* ROBERT CHASTANG *et al.*, Defendants-Appellees.

First District (4th Division)   No. 78-1589

Opinion filed December 6, 1979.—Rehearing denied January 18, 1980.

Hubert E. Hermanek and Arnold B. Kalnitz, both of Chicago, for appellant.

Judith Fors, of Chicago, for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Donna Lee, brought an action to recover damages for personal injuries sustained after she was struck by a car as she was crossing the street. The car was being driven by the defendant, Robert Chastang, who was employed by the defendant, J. Wiss & Sons Company. The jury returned a verdict in favor of the plaintiff for $7700. Diane Weaver, the mother of Donna Lee, brought an action for medical expenses incurred on behalf of the minor plaintiff and was awarded $2144.73. The mother does not appeal. On appeal the plaintiff contends that the trial judge committed reversible error in allowing improper testimony from the defendant's witness during surrebuttal and that the jury's verdict was grossly inadequate in view of her injuries. The plaintiff asked the court to order a new trial on the issue of damages or, alternatively, to order a new trial on all issues.

Donna was seven years old at the time of the accident. It is uncontroverted that as a result of the accident she sustained a broken leg, bruises, and contusions. She was in traction for two weeks, confined to a body cast for five weeks, suffered constipation and tears in the rectum, and used crutches for four weeks.

There was contradictory evidence as to the existence, significance, and origin of various "permanent" injuries. Dr. Migala, the plaintiff's treating physician, testified that there was a ⅜-inch disparity in the length of Donna's legs. Dr. Sheinkop, the defendant's expert medical witness, stated that the amount of leg length inequality was one quarter of an inch. Both testified that the amount of asymmetry was within the "normal" range. Dr. Migala testified that his opinion was that in Donna's case the asymmetry was attributable to the injury but that it may have occurred earlier. He thought that the inequality was permanent but that it might correct itself as Donna matured. Dr. Migala also noted that the feet were asymmetrical. Dr. Sheinkop contradicted this. Neither doctor indicated that the asymmetry of leg or foot would cause Donna any debility. Dr. Sheinkop noted that 99.9% of the population has some leg length inequality.

Donna and her mother testified to various subjective complaints of Donna. These included leg and back pain after activity and an altered gait. Donna stated that she could not run as fast as before. Both noted the leg length and foot size inequalities.

When called to testify by the defendant, Dr. Sheinkop stated that he had left his records in a cab on his way to court and he was allowed to

refresh his recollection with a letter in which he summarized his findings. He testified that he had viewed X rays of Donna taken in his office. On rebuttal the mother contradicted the doctor's testimony that he had viewed X rays of Donna. The trial was adjourned for the weekend and when it was commenced on Monday the defendants called Dr. Sheinkop for surrebuttal testimony. He stated that he had retrieved his records and they revealed that the mother had been correct; he had not viewed any X rays of Donna. He explained that his records indicated "[t]he appearance of the lower extremity is certainly normal. And the X-ray appearance is most satisfactory" but that in fact he had relied upon the report of a Board certified radiologist and not upon actual X rays. His remaining testimony concerned the medical practice of relying on X-ray reports instead of upon X rays.

During this testimony the plaintiff objected to the scope of questioning allowed. It was the plaintiff's contention that the expert should only have been allowed to testify that he did not order or view X rays of Donna. She argued that it would be beyond the scope of surrebuttal for the doctor to state what he did rely upon instead of X rays or to justify that reliance. These objections were overruled. The plaintiff was then given the opportunity to and did in fact cross-examine Dr. Sheinkop. She limited her cross-examination to those matters which she had argued were the proper subject of surrebuttal.

The plaintiff first contends that the issue raised by the mother's rebuttal was whether or not Dr. Sheinkop took or viewed X rays of Donna. She asserts that the court committed reversible error by not limiting the testimony of Dr. Sheinkop to that issue.

■■ We do not agree. After a party has closed his evidence it is altogether a matter of discretion whether the court will permit him to give further testimony. (*City of Sandwich v. Dolan* (1891), 42 Ill. App. 53, *aff'd* (1892), 141 Ill. 430, 31 N.E. 416; *Pappas v. Peoples Gas, Light & Coke Co.* (1953), 350 Ill. App. 541, 113 N.E.2d 585; and see 6 Wigmore, Evidence §1882 (Chadbourne rev. 1976).) Under the circumstances, the court did not abuse its discretion concerning the testimony it allowed notwithstanding the doctor's brief statement concerning his evaluation of the plaintiff's injury.

■■ The plaintiff makes much of the fact that the doctor's surrebuttal testimony included a statement from the medical records that had been left in the cab. She asserts that in order to preserve her objections to the doctor's testimony she limited her cross-examination to those matters which she thought were proper surrebuttal and that therefore, she "never had any effective opportunity to exercise [the right of cross-examination]" with respect to the doctor's original medical records.

The plaintiff cites no law in support of this argument and we are not

aware of any. She had every opportunity to cross-examine Dr. Sheinkop, and her failure to do so does not constitute grounds for reversal.

■ The plaintiff next contends that the $7700 verdict returned in her favor was inadequate. The general rule is that the question of damages is peculiarly one of fact for the jury and that courts are reluctant to interfere with the jury's exercise of its discretion. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.) It is in the province of the jury to determine the credibility of the witnesses and to assess the weight to be accorded their testimony. (*Robin v. Miller* (1978), 67 Ill. App. 3d 656, 384 N.E.2d 889.) It is well settled that the reviewing court will not overturn a jury's decision on the amount of damages where the jury had been properly instructed as to the elements measuring damages and there is no showing that the size of the verdict is the result of passion or prejudice (*Wilkinson v. Mullen* (1975), 27 Ill. App. 3d 804, 327 N.E.2d 433; *Maguire v. Waukegan Park District* (1972), 4 Ill. App. 3d 800, 282 N.E.2d 6) unless the amount awarded is palpably inadequate or it is clear that the jury disregarded a proven element of damages. *Robin v. Miller; Duncan v. Peoria Yellow Checker Cab Corp.* (1977), 45 Ill. App. 3d 653, 359 N.E.2d 1242.

■ In the instant case the instructions were perfectly proper and plaintiff does not argue otherwise. There is no indication whatever that the verdict was affected by passion or prejudice. It cannot be said, as plaintiff asserts, that the jury "had to have" disregarded proven elements of damages merely because it awarded $7700 to a plaintiff whose leg was broken and who claimed residual problems resulted. To put a low figure on pain and suffering is not the same as disregarding proven elements of damages and it has never been a ground for reversal as such. (*Brown v. St. John's Hospital* (1977), 51 Ill. App. 3d 1044, 367 N.E.2d 155.) The plaintiff cites to cases which overturned verdicts where proven out-of-pocket losses were disregarded. She contends that the jury here disregarded proof of pain and suffering and its award must therefore be reversed. However, the jury did award $7700 after hearing evidence as to plaintiff's pain and suffering and residual problems, and we are not persuaded that it "had to have" disregarded proven elements of damages to arrive at this figure. Similarly, the plaintiff's unsupported contention that the verdict is "grossly and palpably inadequate on its face" is rejected. "[T]he fact that the jury was less than generous does not necessarily mean that their award is legally or 'palpably' inadequate." *Brown v. St. John's Hospital* (1977), 51 Ill. App. 3d 1044, 1046, 367 N.E.2d 155, 156.

■ Considering the evidence as to the effect and nature of the injury, pain and suffering, the award does not appear to be so inadequate that we would be justified in interfering with the jury's exercise of discretion.

The plaintiff asserts that under Illinois law the appellate court is required to protect the rights of infants although no objection is made nor

exception taken in the trial court. While this may be the rule of law it has no application here. Our decision is not based upon any failure of the plaintiff to object or take exception.

For the reasons stated herein the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.