OPAL NUNLEY, Adm'x of the Estate of Dennis W. Churchill, Deceased, Plaintiff-Appellant, *v.* THE VILLAGE OF CAHOKIA, Defendant-Appellee.—(Noel D. Hulsey, Defendant-Appellee.)

Fifth District No. 82—313

Opinion filed April 28, 1983.

David M. Duree, of O'Fallon, and Leritz & Reinert, P.C., of St. Louis,

Missouri, for appellant.

Richard F. Nash, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Noel D. Hulsey.

Robert W. Cadagin, of Cadagin, Cain & Tognarelli, of Collinsville, for appellee Village of Cahokia.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, as administratrix of the estate of the decedent, Dennis W. Churchill, brought negligence actions against defendants, the Village of Cahokia (hereinafter the Village) and Noel D. Hulsey. It was alleged that the Village was negligent in the maintenance of a traffic signal at the street intersection where decedent was killed. It was further alleged that Mr. Hulsey was negligent in the operation of a motorcycle which struck decedent at the intersection. The case was tried and submitted to the jury on a comparative negligence theory as to each defendant. Plaintiff appeals from the verdicts and the judgment returned in favor of defendants.

At trial, Billy Halley, a police officer for the Village, testified that he reported a traffic collision involving a pedestrian and a motorcycle rider which occurred at about 4:30 p.m. on August 27, 1977, at the intersection of Camp Jackson Road and Range Lane in the Village. Officer Halley testified that when he arrived at the scene he discovered decedent, Mr. Churchill, lying on the corner of the intersection and Mr. Hulsey, the motorcycle rider, a few feet farther away. He said he saw no skid marks on the street and that the collision occurred in daylight when the streets were clear and dry. Officer Halley stated that at this intersection Range Lane is a two-lane highway running northeast and southwest and that Camp Jackson Road is four lanes wide running east and west, with two eastbound lanes and two westbound lanes divided by a concrete median. Traffic at the intersection is controlled by electric traffic signals with the normal red-green-amber sequence, but on the afternoon of the collision one of the traffic signals had apparently been damaged by an automobile, and, consequently, the remaining signals automatically switched to flashing yellow for Camp Jackson Road traffic and flashing red for Range Lane traffic. Officer Halley denied that it was a regular practice of the Village to send a police officer to direct traffic at the intersection when the traffic lights malfunctioned and operated in a flashing mode. Officer Halley described the pedestrian traffic at this intersection as minimal.

Officer Halley further testified that Mr. Hulsey told him at the scene of the collision that he was traveling west on Camp Jackson Road when decedent walked out in front of his motorcycle. According to Officer Halley, Mr. Hulsey explained that he swerved to avoid hitting decedent but that the decedent turned and started back towards the curb and stepped right in front of him. Officer Halley said he also spoke with two eyewitnesses, Jeff Fox and Martin Blecha, and that their descriptions of the collision were consistent with Mr. Hulsey's observations.

Noel Hulsey testified that he and Martin Blecha were on their motorcycles traveling west on Camp Jackson Road, approximately one-half block from the intersection with Range Lane, when they first observed decedent. He said the traffic signals on Camp Jackson Road were flashing yellow and traffic was moderately heavy. Mr. Hulsey said he heard the sound of a car's horn and saw decedent take a few steps and jump up to the curb from in front of a car traveling in the westbound curb lane of Camp Jackson Road. Mr. Hulsey said that at this time he did not apply the brakes on his motorcycle but let up on the motorcycle's throttle and began to slow down.

Mr. Hulsey related that he next saw decedent from a distance of approximately 30 feet from the intersection. According to Mr. Hulsey, decedent ran from the northwest corner of the intersection through the westbound curb lane and into the westbound median lane of Camp Jackson Road. When Mr. Hulsey observed decedent running into the street, he said he applied his back brake and began to swerve into the westbound curb lane of Camp Jackson Road away from decedent, continually sounding his horn as he did so. Mr. Hulsey testified that he did not apply his motorcycle's front brake because of the possibility of dumping the motorcycle in the street. Mr. Hulsey said that as he began his evasive actions he saw decedent stop for an instant in the median lane and stoop over, apparently to pick up a book from the street. Mr. Hulsey said he next saw decedent a few feet directly in front of his motorcycle in the westbound curb lane near the curb itself. Mr. Hulsey stated that he applied both front and back brakes at that moment but was unable to avoid the collision.

Martin Blecha took the stand and corroborated many of the details of Mr. Hulsey's testimony. Mr. Blecha estimated that both he and Mr. Hulsey were traveling at about 40 m.p.h. as they approached the intersection and about 15 m.p.h. and 30 m.p.h., respectively, at the time of impact. Mr. Blecha testified that decedent's progress into the intersection prior to the collision brought him within three feet of the median and that he would have avoided the collision had he con-

tinued to proceed across instead of attempting to make it back to the curb on the north side of the intersection. Mr. Blecha further testified that decedent did not look toward the oncoming traffic when he entered the intersection, nor did he look toward the oncoming traffic when he returned and ran in front of Mr. Hulsey's motorcycle.

Jeff Fox, who was traveling west on Camp Jackson Road in a pickup truck at the time of the collision, testified that he saw decedent run out into the street, stop, and act like he was going to proceed across to the median but that he appeared undecided as to what to do. Mr. Fox stated he then saw decedent run back to the point where the collision occurred. Mr. Fox also stated a belief that if decedent had not run back in front of the motorcycle, Mr. Hulsey's evasive actions would have avoided the collision.

Village Mayor Michael King testified that the intersection at Camp Jackson Road and Range Lane was hazardous before traffic signals were installed in 1975 but that this situation was, for the most part, rectified by the installation of the traffic signals. Mayor King said that the intersection was not a pedestrian crossing and that there was no pedestrian overpass or crosswalk, nor were there pedestrian traffic signals at the intersection. Mayor King indicated that it was the regular practice of the Village police to direct traffic at this intersection when there was heavy traffic and a hazardous condition existed. The mayor also stated that the Village owned and maintained the traffic signals and that on the day of the collision he noticed that the signal at the intersection was flashing yellow sometime between 1 p.m. and 4 p.m. Mayor King radioed the police dispatcher, who informed the mayor that the police had already been notified of the situation and had called Dron Electric Company to perform repairs on the damaged signals. The signals were not repaired until several hours after the collision involving decedent.

Dr. Asif A. Hameedi, the emergency room physician at the Centreville Township Hospital, testified that decedent suffered a fracture of the right leg and severe head injuries which caused decedent's death.

Darlene Atchinson testified that traffic at the intersection of Camp Jackson Road and Range Lane was heavy both before and after the collision and that the signal on Camp Jackson Road was flashing yellow at around noon on the day of the collision. Mrs. Atchinson and her teenage daughters Ilene and Melody stated that pedestrians crossed at this intersection daily.

A number of ordinances of the Village relating to traffic control were read into evidence by the plaintiff's counsel.

Lieutenant Lawrence Sanderson of the Village police testified that the State of Illinois had exclusive control of Camp Jackson Road but acknowledged that the Village constructed and owned the traffic signals. Lieutenant Sanderson also testified that after installation of the traffic signals in 1975, the automobile collision rate at the intersection decreased, resulting in eight collisions in 1980 and six collisions in 1981, but there had been no collisions involving pedestrians. Lieutenant Sanderson concluded that if a pedestrian used good judgment in crossing the intersection at Camp Jackson Road and Range Lane "it shouldn't be that much of a hazard."

During closing argument plaintiff argued that the Village was negligent in that (1) it did not send a police officer to direct traffic at the intersection of Camp Jackson Road and Range Lane during the approximate six-hour interim when the traffic lights malfunctioned and the lights were in the flashing mode; (2) it failed to provide safe passage across the intersection; and (3) it failed to warn pedestrians of the danger at the intersection. Plaintiff also argued that Mr. Hulsey failed to use reasonable care in that he failed to slow down and apply his brake soon enough.

Both defendants argued, *inter alia*, that their actions were not the proximate cause of the decedent's death. They submitted to the jury that the decedent's own negligence in entering traffic and failing to look before doing so was the sole cause of decedent's death.

In her post-trial motion, plaintiff moved for judgment *n.o.v.* on the issue of liability and, alternatively, for a new trial.

Plaintiff first argues that the negligence of the Village and Mr. Hulsey were, as a matter of law, the proximate cause of decedent's death and the trial court should have granted her motion for judgment *n.o.v.* We cannot agree.

Initially, we agree with plaintiff that governmental immunity is not an issue in this case since the Village admitted that it had contracted for insurance against the liability sought to be imposed and, therefore, has waived any defenses available to the Village under the Local Governmental and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1981, ch. 85, par. 1—101 *et seq.*; *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 365, 282 N.E.2d 437, 442; *Gowler v. City of Mt. Vernon* (1972), 7 Ill. App. 3d 466, 467, 288 N.E.2d 80, 81.

The standard governing our review of the trial court's decision to deny plaintiff's request for judgment *n.o.v.* is the rule announced in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. There the court stated that judgment *n.o.v.* can

be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) This is not such a case. The issue at trial was whether the negligence of both or either of the defendants was the proximate cause of the decedent's death. This was a question of fact for the jury. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84, 117 N.E.2d 74, 80; *Haas v. Tomaszek* (1978), 56 Ill. App. 3d 656, 659, 371 N.E.2d 1240, 1243.) In this case, we think the trial court properly let the jury determine whether the actions of the Village or Mr. Hulsey constituted negligence which proximately caused decedent's death.

 Plaintiff cites a number of cases in support of her contention that the Village must be held liable as a matter of law. We find these cases to be distinguishable. The present case does not involve the failure to maintain the visibility of a stop sign or intersection as did *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242, and *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326. Nor does this case involve the failure to illuminate a street as did *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205, or the removal of a traffic light as in *Johnston v. City of East Moline* (1950), 405 Ill. 460, 91 N.E.2d 401. Also, the instant case does not present a question regarding a municipality's liability for hazards which protrude into the street as did *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, and *Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151, 306 N.E.2d 287. In the case at bar, the allegedly hazardous traffic lights were operating although not in a green-yellow-red sequence. We conclude as a matter of law that a municipality is not liable in a situation such as this where the traffic lights were operational and created no danger at the intersection.

Additionally, we cannot say that Mr. Hulsey is at fault as a matter of law. While the jury could have accepted plaintiff's argument that Mr. Hulsey was negligent by failing to stop in time to avoid the collision, the evidence was not so overwhelming as to preclude the jury from finding that Mr. Hulsey exercised due care and that the sole proximate cause of the accident was decedent's own negligent attempt to retrieve an object from the street. (See *Moore v. Checker Taxi Co.* (1971), 133 Ill. App. 2d 588, 592, 273 N.E.2d 514, 516-17.) Both pedestrians and motorists have mutual obligations to exercise due care. (*Palausky v. Landers* (1978), 67 Ill. App. 3d 985, 987, 385 N.E.2d 751, 752.) We find that the jury properly could have concluded

that the decedent's conduct alone was the proximate cause of the collision which resulted in his death.

We reject plaintiff's suggestion that the recent case of *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, which adopts comparative negligence in Illinois, somehow dictates another result. The law remains that if the conduct of a defendant is found not to be the proximate cause of the injury, no liability arises. Plaintiff's reliance on *Agnello v. Puzzo* (1982), 110 Ill. App. 3d 913, 443 N.E.2d 648, is also misplaced. In *Agnello* the defendant admitted passing an ice cream truck entering the wrong lane of traffic with children nearby. In the case before us, defendant was lawfully proceeding through an intersection in the proper lane.

■ Plaintiff also argues that although the evidence may not be so overwhelmingly in her favor to warrant the trial court to enter judgment *n.o.v.*, the judgment was against the manifest weight of the evidence and a new trial should be granted. Again, we disagree. In determining whether a jury's verdict is against the manifest weight of the evidence, the inquiry on appeal is whether the result reached is reasonable on the facts and evidence, not whether other conclusions are possible. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447, 454.) For a verdict to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Kofahl v. Delgado* (1978), 63 Ill. App. 3d 622, 624, 380 N.E.2d 407, 410.) We find that given the evidence presented in the present case, it was reasonable for the jury to conclude that the proximate cause of decedent's death was decedent's lack of due care in entering the street as he did.

The evidence establishes that when Mr. Hulsey approached the intersection on his motorcycle, the light on Camp Jackson Road was flashing yellow and the light on Range Lane was flashing red. As Mr. Hulsey approached, decedent jumped to the north curb from in front of an oncoming car. Mr. Hulsey continued toward the intersection and decedent ran back into the street in front of Mr. Hulsey. In order to avoid a collision, Mr. Hulsey swerved into the curb lane away from decedent. At this time, decedent, without looking for oncoming traffic, turned and ran back toward the north curb into the path of the motorcycle. Mr. Blecha testified that a sudden stop by Mr. Hulsey probably would have caused the traffic following the motorcycles to run into them. Both Mr. Blecha and Mr. Fox testified that Mr. Hulsey's attempt to avoid the collision would have been successful had decedent not run into Mr. Hulsey's path. We conclude that the evidence supports the jury's decision not to impose liability based on the

Village's maintenance of the traffic lights or Mr. Hulsey's actions and that the verdicts were not unreasonable.

■ Finally, plaintiff complains that the trial court erred by improperly instructing the jury. We do not consider this issue; plaintiff failed to raise this contention in her post-trial motion and has, therefore, waived it. Ill. Rev. Stat. 1981, ch. 110, par. 68.1(2); 87 Ill. 2d R. 366(b)(2)(iii); *Sandquist v. Kefalopoulos* (1977), 49 Ill. App. 3d 456, 460, 364 N.E.2d 475, 478.

Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.