IVAN R. BARR, Plaintiff-Appellant, v. ROBERT GROLL *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0520

Opinion filed January 24, 1991.—Rehearing denied March 7, 1991.

HOWERTON, J., dissenting.

Johnson, Frank, Frederick & Walsh, of Urbana, and Law Offices of Richard J. Schmitz, of Pana, for appellant.

Edward T. Graham, Jr., and Ronald W. Periard, both of Hershey, Beavers, Periard & Graham, of Taylorville, for appellees.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Ivan Barr, brought this action in the circuit court of Christian County seeking to recover for injuries he sustained when his motorcycle struck a dog belonging to defendants. The action was brought pursuant to the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, par. 351 *et seq.*).

Prior to trial, Barr filed a motion for summary judgment on the issue of liability, and attached to the motion the depositions of the parties and affidavits of the police officers who responded and of the sole occurrence eyewitness, Don Rakers. The trial court granted the motion. Approximately one year later, the Grolls filed a motion for reconsideration and included the discovery deposition of Don Rakers. After a hearing, the court granted the defendants' motion and the case proceeded to trial on both liability and damages.

At trial, only one occurrence eyewitness, Don Rakers, testified. Barr himself could not remember anything about the occurrence because the injury he sustained affected his memory. Rakers testified that on June 19, 1983, Barr was riding east in the right lane when defendants' dog appeared at the edge of the road. When Barr was 60 to 90 feet away, the dog started to cross. As the dog crossed his path, Barr attempted to avoid him. Barr first veered left, but the dog "speeded up." Barr then turned right, but struck the dog and flipped over. While still at the scene, Barr complained of head pains and vomited.

Barr was taken to a hospital where he was treated by Dr. Fabi, who found swelling and a tenderness in the right occipital region of Barr's skull. Dr. Fabi diagnosed a skull fracture and cerebral concussion. Dr. Fabi then referred Barr to Dr. Pearson, a board-certified neurosurgeon. Dr. Pearson also diagnosed a skull fracture and concussion. While with Dr. Pearson, Barr complained of hearing problems, headaches, and dizziness.

Several months after the accident, Barr was referred to Dr. Thomas Griffith, a board-certified ear, nose, head and neck surgeon. Dr. Griffith found permanent damage to the inner ear, tinnitus, and a hearing loss in the right ear. Barr was also continuing to suffer from headaches and dizziness, and Dr. Griffith indicated that this dizziness would affect Barr's job as a construction laborer.

Barr returned to Dr. Pearson in July of 1985, after experiencing a continuing problem with loss of smell and taste sensations. Pearson diagnosed this condition as being caused by the severing of Barr's olfactory nerve as a result of the collision. Barr continued to experience

problems, and Dr. Fabi eventually referred him to Dr. Edward Trudeau, a specialist in rehabilitation medicine. After performing his own tests, Trudeau referred Barr to Dr. Johnathan Hess, a neuropsychologist and registered psychologist. Dr. Hess first saw Barr in 1985. After extensive testing, Dr. Hess diagnosed traumatic brain injury or post-concussion syndrome, which was caused by the 1983 collision. Dr. Hess confirmed these findings when he reevaluated Barr in 1988, and, based on the results of a newly developed test, added anoxic encephalopathy, a condition relating to the lack of oxygen being transmitted to the brain, to his diagnosis.

As a result of his condition, Barr suffered obvious memory problems, including a condition known as "perseveration" where there is an inappropriate carryover from a prior attention focus to the future. Hess also found that Barr did not have a significant IQ loss, but such would not be expected from the type of injury Barr suffered.

Hess referred Barr to Dr. Greenwald for marriage counseling, and Greenwald in turn referred Barr to Dr. Couch, a board-certified neurologist and headache specialist, for treatment of Barr's persistent headaches. Dr. Couch arrived at the same diagnosis that Hess did, post-concussion syndrome. Dr. Couch indicated that this caused drastic changes in mentation, personality, ability to learn, and ability to work. As a result of his injury, Barr was depressed, moody, and unable to work.

At trial, Hess, Couch, and Pearson all opined that Barr's injury prevented him from working any type of competitive employment and that such condition was permanent. Two vocational specialists testified and corroborated those opinions, indicating that Barr's only chance for employment was in a sheltered workshop. They also stated that he was unable to follow directions or work without constant supervision.

Testimony indicated that Barr's medical expenses were $13,394.84. Barr had been unable to work since the accident. He had been forced to turn down several jobs because of medical reasons. Barr's average annual wages for the five-year period preceding the accident were $2,900, but no less than $640 in any one year. Testimony indicated that while the construction labor market was extremely depressed during that period, it had improved markedly since 1983 in terms of job opportunities and wages, and many construction workers were now earning in excess of $20,000 annually. Further testimony indicated Barr had a work-life expectancy of 24.7 years.

The jury returned a verdict in favor of Barr and awarded him $10,000: $4,550 for past medical expenses; $2,225 for past pain and

suffering, $3,225 for past lost wages, and nothing for future medical expenses, pain and suffering, lost earnings or disability. Barr appeals.

Barr first argues that the jury's assessment of monetary damages is against the manifest weight of the evidence. Barr maintains that the jury failed to make any awards for certain proven elements of damage and awarded wholly inadequate amounts for others.

■ Generally, a jury verdict will be upheld on appeal unless it is clearly contrary to the manifest weight of the evidence. (*Voss v. Tune* (1984), 121 Ill. App. 3d 692, 693, 460 N.E.2d 51, 52.) A verdict will be found to be against the manifest weight of the evidence if it is clearly erroneous and unreasonable based upon the facts and evidence. (*Gilman v. Kessler* (1989), 192 Ill. App. 3d 630, 548 N.E.2d 1371; *Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 450 N.E.2d 363.) A verdict may be found contrary to the manifest weight of the evidence where the size of the award is the result of passion or prejudice, where the amount is palpably inadequate, or where the jury disregarded proven elements of damages. *Collins v. Straka* (1987), 164 Ill. App. 3d 355, 517 N.E.2d 1147; *Lee v. Chastang* (1979), 79 Ill. App. 3d 622, 398 N.E.2d 1250.

■ We are mindful that in cases such as this, where the verdict turns primarily upon the credibility of the witnesses, a reviewing court should be particularly deferential to the determination of the jury. The jury has the better opportunity to hear the witnesses and observe their demeanor, and so is in a better position than a reviewing court to determine the witnesses' credibility. Jury verdicts are not sacrosanct, however, and where clearly erroneous or unjust, must be set aside. Based upon a review of the record, we conclude that such is the case here.

Seven health care professionals testified without contradiction that Barr suffered permanent injuries as a result of the collision and the defendants offered no medical evidence in rebuttal, yet the jury awarded no damages for disability arising from Barr's permanent injuries, despite substantial uncontradicted evidence of such disability. The jury also declined to award any damages for future lost wages. All seven medical experts testified that Barr could not return to work as a construction laborer and several testified that he could never return to any type of competitive employment because of his inability to follow instructions and need for constant supervision, both of which resulted from his brain injury.

■ The jury failed to award any damages for future pain and suffering, even though numerous medical witnesses testified that Barr would continue to suffer pain in the future. Finally, the jury failed to

award damages for future medical expenses, despite evidence that Barr would need continued treatment. The Grolls argue and we recognize that the credibility of the various medical experts is for the jury to determine and that a damage award is not reversible merely because it is less than the plaintiff sought, but here the jury simply failed to make any award for several elements of damages despite clear evidence demonstrating their existence. Consequently, the verdict must be set aside and the cause remanded.

We must next determine whether the cause need be remanded for a new trial on the issue of damages alone, or on the issue of liability as well. The standard for making such a determination is well settled:

> " 'A new trial on the question of damages only is appropriately granted "where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability." ' " *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 408, 485 N.E.2d 4, 7, quoting *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 456, 394 N.E.2d 391, 393.

To prove liability under section 16 of the Animal Control Act, a plaintiff must show:

1. The defendant's dog, without provocation, attacked or injured plaintiff;
2. The defendant owned the dog;
3. The plaintiff's conduct was peaceable;
4. The plaintiff was injured in a place where he had a legal right to be.

Ill. Rev. Stat. 1983, ch. 8, par. 366; *Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 344 N.E.2d 268.

The sole occurrence eyewitness, Don Rakers, testified that Barr was riding on the highway when the Grolls' dog started to cross. Barr attempted to avoid the dog, but struck it anyway. Clearly, Barr was in a place where he had a right to be, and the Grolls admitted owning the dog. Further, there is sufficient evidence to support the jury's determination that Barr did not provoke the dog and was peaceably conducting himself. We also find the issues of liability and

damages to be sufficiently separate and distinct such that a new trial on the issue of damages alone would not be unfair to the Grolls. Finally, nothing in the record suggests a compromise verdict. The Grolls argue that based on the evidence, the jury could have believed that Barr caused his own injury, that he "provoked" the dog or that he was not engaged in "peaceable conduct" and was trying to strike the dog and reduced the amount of the award accordingly. Any such finding, however, would have precluded a finding of liability altogether.

■■ Barr next argues that the introduction of his school records, including his IQ scores, was improper because the Grolls failed to lay an adequate foundation. Supreme Court Rule 236(a), which governs the admissibility of business records, provides as follows:

"Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind." 107 Ill. 2d R. 236(a).

Barr argues that Mr. Heaton, the superintendent of Barr's school district at the time of trial and the witness proffered to supply the foundation for Barr's school records, was not the custodian of those records, never stated the records were made in the regular course of business, never testified that they were made at or near the time of the occurrence in question, and provided no testimony that the record was made by a person with knowledge of the occurrence in question. A review of the testimony demonstrates that, contrary to Barr's assertions, Heaton's testimony does demonstrate that the records in question were made in the ordinary course of business and that they were made at or near the time of the occurrence in question. As to Barr's other two complaints, that Heaton was not the custodian of the school records and did not testify that they were made by a person with knowledge of the events in question, these circumstances affect the weight of the record, but not its admissibility. (107 Ill. 2d R. 236(a).) Anyone familiar with the records sought to be admitted and acquainted with the business and procedures may testify as to the rec-

ords. *Thomas v. Police Board* (1980), 90 Ill. App. 3d 1101, 414 N.E.2d 11.

■■ Barr also contends that his school records were irrelevant. We find that because one of Barr's elements of damage was based upon his impaired mental abilities, evidence of his level of mental ability prior to the accident was relevant. The court did not err in allowing the jury to examine these records during deliberations. Whether and which records are to be provided to the jury rests with the sound discretion of the trial court, and we find no abuse of discretion.

Barr raises a number of other issues on appeal, but as none bear on the question of damages, we need not address them.

The decision of the circuit court of Christian County is affirmed in part and reversed and remanded in part for a new trial on the issue of damages alone.

Affirmed in part; reversed and remanded in part.

HARRISON, J., concurs.

JUSTICE HOWERTON, dissenting:
I dissent. I would affirm.