ROBERT W. WILLIAMS, Plaintiff-Appellee, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellant.

First District (1st Division)   No. 1—90—3286

Opinion filed July 6, 1992.

Michael W. Rathsack, of Chicago (James M. Dower and Michael W. Rathsack, of counsel), for appellant.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Stephen S. Phalen, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

This is an appeal from a jury verdict entered in favor of plaintiff Robert Williams and against defendant Commonwealth Edison. Plaintiff was injured while working on defendant's premises as a subcontractor. The jury entered a verdict in favor of plaintiff in the amount of $221,500, which was reduced to $155,325 based on his comparative negligence. The itemized verdict included nothing for present or future disability, $41,000 for pain and suffering, $10,000 for medical expenses, and $221,000 for past and future lost wages.

Plaintiff Robert Williams was employed with Morrison Construction Company as a millwright. On December 11, 1982, he worked at the defendant Commonwealth Edison's nuclear power plant and conducted a bearing inspection. While there, plaintiff observed oil on the floor near the area in which he was working. Plaintiff testified that there was "oil dry" (an absorbent) on the floor but that there were no absorbent mats for the oil. Plaintiff stated that the area was slippery and dangerous. Plaintiff testified that a co-worker requested that the area be cleaned, but that his request was never honored.

Later that afternoon, plaintiff and his co-worker left for lunch. They approached the stairs, where they noticed that oil remained on the floor and around the pump where they had worked. As plaintiff walked down the stairs he slipped, hit the handrail, and fell to the lower deck. Plaintiff testified that he twisted his left leg and knee.

Plaintiff did not remember whether he wiped his feet before leaving the pump area, but after the fall he noticed that the sole of his shoe was shiny with oil. He stated that he did not see any oil on the stairs. A co-worker testified that both he and plaintiff had wiped their feet before leaving the area.

Plaintiff was first treated for his knee injury by Dr. Bettasso on December 16, 1982, and again on December 27, 1982. Dr. Bettasso ordered an arthrogram, which was performed December 30, 1982. After the arthrogram was completed, Dr. Bettasso referred plaintiff to Dr. Choy, a bone specialist. Dr. Choy saw plaintiff twice in January 1983 and advised him that he and Dr. Bettasso would perform an operation on plaintiff's knee.

After seeing Dr. Choy in early January 1983 plaintiff saw Dr. Paproski, a knee specialist, who performed an operation on plaintiff's knee January 20, 1983. Plaintiff remained off work from that time until March 22, 1983, when he was released to return to work. He returned to work as a millwright on March 12, 1983, and continued to receive therapy weekly for the knee. The knee problem interfered with his ability to perform all the duties of a millwright that he had performed before the fall.

Plaintiff was next treated by Dr. Pinzer in the fall of 1983. At that time, he received an injection to freeze the knee. He was also treated by Dr. Loyal for that same injury.

Plaintiff returned to see Dr. Paproski on December 15, 1983. On January 20, 1984, Paproski admitted plaintiff into the hospital and performed a second knee operation. Plaintiff received follow-up therapy until May of 1984 when he was released to return to work.

Plaintiff testified that after the second operation, he continued to experience pain to his knee. He was unable to kneel for any length of time, could not walk beams or climb ladders, and felt pain if he bumped his knee. Plaintiff testified that the work of a millwright required that he be able to perform all these duties. Plaintiff testified that he turned down several job offers at other locations because they involved climbing and the injury prohibited him from doing so. Plaintiff was off work for two periods of time due to the injury. He was first off work from January 20, 1983, through March 15, 1983, and again from January 25, 1984, through May 23, 1984.

Plaintiff stated that his earnings also decreased after the injury. In 1981 he earned $47,000 and $46,000 in 1982. In 1983 he earned $16,000, and about $12,000 in 1984. Plaintiff earned $12,000 in 1985 and $17,000 in 1986. He earned $20,000 in 1987 and $17,000 in 1988. Plaintiff testified that he was not able to perform the work that he once did, and that he never earned the $44,000 which he earned before the injury.

At trial, Dr. Rentschler testified as an expert witness on behalf of plaintiff. He treated plaintiff in 1986 and diagnosed plaintiff to have a neuroma on the left knee. Dr. Rentschler also opined that at the time of his first surgery, plaintiff had chondromalacia. He further opined that plaintiff's knee was in the post-operative state following the two surgeries. Dr. Rentschler opined that plaintiff's left knee pathology was permanent. He stated that the pain plaintiff experienced in kneeling and squatting, and pressure to the knee, were caused by the trauma to his knee resulting from the injury in December 1982. Dr. Rentschler opined that plaintiff would have difficulty working in the

position of millwright as that position involved squatting and kneeling.

Dr. Milgram testified that he treated plaintiff in April 1987. He also reviewed Dr. Paproski's operative report dated January 1983 and the medical notes indicated that plaintiff had chondromalacia (softening of cartilage) at the time of an arthroscopic procedure. Dr. Milgram stated that the disease probably took years to develop. Dr. Milgram opined that the disease in plaintiff's knee was not caused by the December 1982 injury. He stated that the injury preexisted and could not have occurred in six weeks. Dr. Milgram also noted that Dr. Paproski's report did not include a finding that plaintiff had a neuroma, and in his opinion plaintiff did not have a neuroma.

At the end of plaintiff's case, defendant moved for a directed verdict. The court denied this motion. At the end of defendant's case, defense counsel tendered Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971) (hereinafter IPI Civil 2d), which allows an adverse inference to be drawn if a party fails to call a witness. The court refused to give the jury that instruction, and also instructed defense counsel not to comment on that issue during closing argument. Defense counsel also objected to instructions on future lost wages on the grounds that plaintiff did not prove future wage loss and had not claimed any future wage loss in his answers to interrogatories. The court also overruled this objection.

The jury returned an itemized verdict which awarded nothing for present or future disability, $41,000 for pain and suffering, $10,000 for medical expenses, and $221,000 for past and future lost income. The jury also found plaintiff 43% negligent and reduced the gross verdict from $272,500 to $155,325. By special interrogatories the jury found defendant was negligent. Defendant's post-trial motion was denied, and judgment was entered on the verdict. Defendant appealed this judgment.

On appeal defendant argues that: (1) the verdict and judgment were fatally inconsistent because the jury awarded future lost wages without finding that plaintiff had suffered any disability; (2) the trial court erred in refusing to tender IPI Civil 2d No. 5.01 and instructing defense counsel not to comment on plaintiff's failure to call his treating physician; and (3) the jury verdict was against the manifest weight of the evidence.

Defendant first argues that the jury verdict was fatally inconsistent. Specifically, it argues that the jury found that plaintiff suffered no disability and yet awarded him future lost wages. Defendant cites to *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 495 N.E.2d 141,

where the jury rendered an itemized verdict awarding medical expenses, but awarding nothing for disability or pain and suffering. On review the appellate court found that the jury's verdict was irreconcilably inconsistent. In reversing the case and granting plaintiff a new trial, the appellate court stated:

"If the jury believed that plaintiff had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if it believed that plaintiff's pain and suffering were sufficiently serious to warrant expenditures for pain medication and physical therapy, its failure to award her compensation for that pain and suffering means that it disregarded a proven element of damages." 144 Ill. App. 3d at 1046.

Defendant also cites *Bisset v. Joseph A. Schudt & Associates* (1985), 133 Ill. App. 3d 356, 478 N.E.2d 911, where the appellate court determined that a discrepancy existed in the damage amount claimed by plaintiff and that awarded by the jury. The court determined in that instance that the award by the jury was against the manifest weight of the evidence and awarded a new trial. The court further noted that the jury gave plaintiff nothing for his lost wages even though there was unrebutted evidence of a disability which limited his ability to work.

Plaintiff contends that the jury's verdict here was consistent because disability and future wage loss are two separate elements of damages. Plaintiff maintains that the jury understood and followed the instructions of the trial court. He asserts that the jury considered each element of damages and concluded that the injuries to his knee resulted in a permanent reduction of earnings.

Plaintiff cites to *McGuckin v. Chicago Union Station* (1989), 191 Ill. App. 3d 982, 548 N.E.2d 461, for the proposition that an inconsistent verdict is a verdict which includes irreconcilable conclusions. Plaintiff contends that the jury found his inability to return to work as a millwright was compensable in the form of lost wages, both present and future. Plaintiff further cites *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4, for the proposition that a verdict is generally within the discretion of the jury and a reviewing court should not order a new trial on damages unless the damages awarded are inadequate, if proved elements of damages have been ignored, or if the awarded amount has no reasonable relationship to the loss which plaintiff suffered.

Plaintiff also cites to a Nebraska Supreme Court case, *Hunter v. Sorensen* (1978), 201 Neb. 153, 266 N.W.2d 529, which held that

where a jury awarded damages for lost time and medical expenses, but no damages for his injury, disability or pain and suffering, the verdict was not inconsistent. Plaintiff contends that as in *Hunter*, there was a reasonable basis here for the jury to award him future lost wages because his earning capacity had diminished since he could no longer work as a millwright.

Generally, a jury verdict will be upheld on appeal unless it is clearly contrary to the manifest weight of the evidence. (*Voss v. Tune* (1984), 121 Ill. App. 3d 692, 460 N.E.2d 51.) A verdict will be found to be against the manifest weight of the evidence if it is clearly erroneous and unreasonable based upon the facts and evidence. (*Gilman v. Kessler* (1989), 192 Ill. App. 3d 630, 548 N.E.2d 1371.) A verdict may be found to be against the manifest weight of the evidence where the size of the award is the result of passion or prejudice, where the amount is palpably inadequate, or where the jury disregarded proven elements of damages. *Collins v. Straka* (1987), 164 Ill. App. 3d 355, 517 N.E.2d 1147.

In *Barr v. Groll* (1991), 208 Ill. App. 3d 318, 567 N.E.2d 13, plaintiff was injured in a motorcycle accident and suffered brain damage. Plaintiff filed an action to recover from defendant, whose dog struck plaintiff's motorcycle. The jury returned a verdict in his favor for $4,550 for past medical expenses, $2,225 for past pain and suffering, $3,225 for past lost wages, and nothing for future medical expenses, pain and suffering, lost earnings or disability. The appellate court set aside the verdict and remanded the case on the grounds that the jury's failure to award damages for several elements of damages despite clear evidence demonstrating their existence was against the manifest weight of the evidence. The court reasoned that there was substantial uncontradicted evidence of the permanent injuries plaintiff suffered and medical testimony that plaintiff could not return to work as a construction laborer. The jury declined to award damages for the disability and also the damages for future wage loss.

■ The *Barr* case supports plaintiff's position that disability and future lost wages are two distinct elements of damages. *Hinnen* is distinguishable based on the fact that the court in *Hinnen* awarded medical expenses but no award was given for disability or pain and suffering. In *Barr*, awards were given for past medical expenses, pain and suffering and lost wages, but not for future medical expenses, pain and suffering, lost earnings or disability. Thus, the jury's award here of future lost earnings was not fatally inconsistent.

Defendant next argues that the court erred in refusing to instruct the jury that it could draw an adverse inference from plaintiff's fail-

ure to call his treating physician as a witness. Defendant asserts that there was no evidence that Dr. Paproski was beyond the jurisdiction of the court, nor that he was unable to testify. Defendant maintains that therefore, it could be inferred that the doctor's testimony would have been unfavorable.

Defendant cites *Hollembaek v. Dominick's Fine Foods, Inc.* (1985), 137 Ill. App. 3d 773, 484 N.E.2d 1237, for this proposition. In that case, plaintiff requested that jury instruction IPI Civil 2d No. 5.01 be given after defendant failed to call the doctor who examined plaintiff at defendant's request before trial. While the appellate court stated that the trial court was first required to make a determination whether, in all likelihood, the party would have produced that witness unless the testimony was in fact unfavorable, it went on to hold that because the doctor who examined plaintiff was under defendant's control, in all likelihood defendant would have produced him but for the fact that the testimony would have been unfavorable.

■ As a general matter, the adverse inference is available when the missing witness is under the control of the party to be charged and could have been produced by reasonable diligence, the witness was not equally available to the party requesting that the inference be made, a reasonably prudent person would have produced the witness if the party believed that the testimony would be favorable, and no reasonable excuse for the failure to produce the witness is shown. (*Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 576 N.E.2d 918.) The giving of the instruction is within the sound discretion of the trial court, and a reviewing court will reverse only where a clear abuse of discretion has been shown. *Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 513, 492 N.E.2d 1364.

■ The same criteria govern the use of this instruction and the allowance of comments in closing argument regarding the adverse inference from a party's failure to produce a witness. *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 22, 541 N.E.2d 643.

*Hollembaek* is distinguishable from the instant case. Here, the doctor was not hired by defendant to examine plaintiff or under its control. Further, plaintiff never hired Dr. Paproski as an expert. Moreover, Dr. Paproski was equally available to plaintiff and defendant. Therefore, the court did not abuse its discretion in failing to grant the IPI Civil 2d No. 5.01 instruction and in advising defendant not to comment on the failure of plaintiff's treating physician to testify.

■ Defendant lastly argues that the jury's verdict was against the manifest weight of the evidence. It maintains that in order to recover for lost earnings, the loss must be reasonably certain to occur and not be based on testimony which is speculative or uncertain. (*Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 461 N.E.2d 551.) Defendant asserts that in the instant case, plaintiff failed to present any competent medical testimony that his injury prevented him from working at his customary job.

Plaintiff provided testimony by Dr. Rentschler, who stated that he was familiar with the work performed by millwrights and that it involved erecting and repairing heavy machinery. He further testified that plaintiff would have problems squatting, kneeling, carrying heavy equipment and climbing indefinitely. Plaintiff testified that he was unable to kneel for longer than two minutes, unable to walk beams as he once did, and was unable to climb ladders. Further, he testified that the work of a millwright involved climbing and walking beams. Moreover, his salary as a millwright before the injury was $44,000 and after the injury, he never earned more than $20,000 because he was unable to do the work of a millwright.

The determination of an adequate verdict is peculiarly within the province of the jury and great weight must be given to its determination. (*Zitzmann v. Miller* (1990), 194 Ill. App. 3d 477, 551 N.E.2d 707.) A reviewing court will not disturb the jury's findings unless the damages are manifestly inadequate. (*Collins v. Straka* (1987), 164 Ill. App. 3d 355, 517 N.E.2d 1147.) A verdict may be found contrary to the manifest weight of the evidence where the size of the award is the result of passion or prejudice, where the amount is palpably inadequate, or where the jury disregarded proven elements of damages. *Barr v. Groll* (1991), 208 Ill. App. 3d 318, 567 N.E.2d 13.

Here, there is no argument or evidence that the jury's verdict was the result of passion or prejudice. Further, there was testimony sufficient for the jury to have reached the verdict that it did. Therefore, the decision was not against the manifest weight of the evidence.

For the following reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.